MRS. FRANK H. MASSEY, Administratrix of the ESTATE OF ROBERT D. MASSEY, Deceased, Appellant, v. CORNELIUS L. BUTTS and WILLIAM W. BUTTS, doing Business as the BUTTS REALTY COMPANY, Respondent.

St. Louis Court of Appeals. Opinion Filed April 6, 1920.

1. **WITNESSES: Qualifications: Death of One Contracting Party: Agent of Other Competent Witness.** In an action by the administratrix of the estate of one contracting to purchase real estate to recover the earnest money payment, the agent of defendant who conducted the negotiations with plaintiff's intestate was not disqualified as a witness by reason of intestate's death.

2. **BROKERS: Real Estate Brokers: Contracts: Sale of Real Estate: Binding Effect of Agent's Contract on Owner and Purchaser: Refund of Earnest Money.** A contract for the sale of real estate executed by real estate broker was intended to become a contract between plaintiff's intestate and the owner of the property in the event that the latter approved the sale, and by signing it defendants acknowledged the receipt of the earnest money and became obligated to return the same to plaintiff's intestate unless the owner should approve the sale within ten days; but upon such approval the provisions of the contract relating to the title and the refunding or forfeiture of the earnest money were clearly stipulations which became binding upon the purchaser and the owner.

3. ———: ———: ———: ———: ———: **Execution of Contract by Seller: Forfeiture of Earnest Money.** Where a contract of sale

for the sale of real estate between an intending purchaser and real estate agents provided for a refund of the earnest money if the title could not be perfected, and for forfeiture to the seller if the purchaser failed to comply to the terms of the contract, and that the contract was subject to approval of the owner, and that it would be approved within ten days or the earnest money refunded, the owner, on executing the contract became entitled to the earnest money payment constituting a part of the purchase price, and the purchaser could not thereafter recover such payment from the real estate agent whether he knew the name of the owner prior to such approval or not, and any question subsequently arising as to the refunding or forfeiture of the earnest money, under the terms of the contract, was a matter between plaintiff's intestate and the owner; and by the term "seller" was meant the owner of the property.

4. CONTRACTS: Sale of Real Estate: Contract Repudiated by Purchaser: Earnest Money Forfeited. Under a contract of sale for the sale of real estate providing for the return of the earnest money payment if the title was found imperfect and could not be perfected within a reasonable time, and for forfeiture to the seller if the purchaser failed to comply with the terms of the contract of sale, the purchaser was not entitled to repudiate the contract without affording a reasonable opportunity for perfection of title, if any imperfection existed; and where he repudiated the contract and refused to perform his part, and persisted therein, in disregard of the terms of the contract, he forfeited his right to the return of the earnest money, under the clause of the contract providing that if the sale be not closed within the time specified owing to the failure of neglect of the purchaser to comply with the terms of the contract, the earnest money was to be forfeited to the seller.

5. ———: ———: ———: Tender of Deed Not Necessary. Where one contracting to purchase real estate unequivocally repudiated the contract and persisted in refusing to perform his part as required by the contract, a tender of the deed to him was not necessary.

6. TRIAL PRACTICE: Admission of Evidence: Immaterial Issue: Harmless. In an action by an administratrix against real estate agents to recover the earnest money payment on a contract for the purchase of real estate, the admission of a receipt claimed to be improperly admitted in evidence, on the ground that it was not competent to prove by this means that defendants were plaintiff's intestate's agents, if error, was harmless.

Appeal from the Circuit Court of the City of St. Louis.
—Hon. Thomas L. Anderson, Judge.

AFFIRMED.

Warwick M. Hough and Lee W. Hagerman for appellant.

(1) When the contract, signed by defendants, per Hobbs, their agent, on April 21, 1909, and signed by Massey on April 24, 1909, was executed by the parties, neither defendants nor Hobbs were the agents of the owner, Young. Under section 2783, Revised Statutes of Missouri, 1909 (the Statute of Frauds), it is provided that "No contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Since this is the law governing the situation, and since the evidence is undisputed (from Young's own testimony) that no such authority, in writing, had been given by him prior to April 27, 1909, there was neither in fact nor in law any relation of principal and agent between Young and defendants at the time the said contract was executed between Massey and defendants. Johnson v. Fecht, 185 Mo. 342-3; Hawkins v. McGarity, 110 Mo. 546; Roth v. Goerger, 118 Mo. 556; Greening v. Steele, 122 Mo. 287, 294. (2) Since the above-said contract was made by defendants as agents, when in fact they were not agents, they bound themselves to the performance of the terms thereof. Hence even if Massey knew who the owner was, the defendants were none the less bound. Tailoring Co. v. Keeley, 58 Mo. App. 495; Wright v. Baldwin, 51 Mo. 269; Chouteau v. Paul, 3 Mo. 260. (3) Under the evidence in this case, even if Young had been defendants' principal, the name of the principal was undisclosed at the time when the defendants made the above-said contract, and hence they were bound to the terms thereof; for, where the name of the principal is undisclosed and the contract purports to be made by an agent for such undisclosed principal, the agent himself, as well as the principal, is bound thereby. McClellan et al. v. Parker, 27 Mo. 162; Lapsley v. McKinstry, 38 Mo. 245; Thompson v. Mc-

Cullough, 31 Mo. 224; Mfg. Co. v. Montgomery, 74 Mo., 103; Porter v. Merrill, 138 Mo. 555; Mechem on Agency (2 Ed.), sec. 1410. Where the contract shows on its face that there is a principal, but fails to disclose his name, such a contract is a contract for an undisclosed principal, and the fact that it is evident that there is a principal does not affect the question of liability, but nevertheless the agent is liable. Thompson v. McCullough, supra; Mechem on Agency, (2 Ed.), sec. 1411; Pike Sons & Co. v. Ongley & Thornton, 18 Q. B. Div. 708. If the agent wishes to avoid personal liability he must disclose his principal at the time of, or before, entering into the contract. Porter v. Merrill, supra, 558; Mechem on Agency (2 Ed.), secs. 1413-14; Argersinger v. MacNaughton (N. Y.), 11 Am. St. Rep. 687. It is no defense that the agent is known to be in the business of an agent or broker. Mechem on Agency (2 Ed.), sec. 1410.; Holt v. Ross, 54 N. Y. 472. The fact that the contract may be binding on the principal will not relieve the agent. Mechem on Agency, sec. 1415. Under the above authorities, applied to the facts of this case, it is evident that defendants rendered themselves directly liable for the performance of the terms of the contract, even if they actually represented Young. (4) Under the above authorities and under the facts of this case defendants were bound to the plaintiff whether the name of the owner, Young, was disclosed or undisclosed at the time the above-said contract was made. The defendants were, however, bound for another and an additional reason: for, when read from its four corners in the light of the surrounding circumstances, the contract must be construed to have been intended by Massey and the defendants to make defendants stakeholders of the earnest money until it was determined whether the sale of the property was going to be completed or not. Consequently the defendants are liable in this case even if the name of the owner, Young, had been disclosed to Massey at the time the contract was made, and even if the law of undisclosed principal

should be held not to apply. Martin v. Allen, 125 Mo. App. 636; Coble v. Dennison, 151 Mo. App. 319; Simons v. Long, 101 Pac. 1070 (Kans., 1909); Meade v. Altgeld, 136 Ill. 298; Goodrich v. Wood, 133 Ill. App. 483; White v. Taylor, 131 Mich. 543; Reed v. Riddle, 48 N. J. Law 359.; Burroughs v. Skinner, 5 Burr 2637 (England, 1894); Gray v. Gutteridge, 3 Carrington and Pa. 40 (England, 1827); Furtrade v. Lumley, 6 Times L. R. 168 (England, 1890). (5) Where the intent of an instrument is discoverable from the instrument itself, extrinsic evidence is not admissible to show any other intent, even though the word "agent" is added to the signature. 1 American and English Encyclopedia of Law (2 Ed.), p. 1053. (6) It cannot be maintained in this case that either the defendants or their agent, Hobbs, were the agents of Massey, for neither of them had any authority in writing to purchase the property for Massey. R. S. 1909, sec. 2783; Schlanker v. Smith, 27 Mo. App. 516; Allen v. Richard, 83 Mo. 55; Calligan v. Winters, 56 Mo. 241. (7) When the owner, Young, signed his name to the approval clause on the paper he did not thereby become a party to the contract with Massey. By such action he merely signified to the defendants, the Butts Realty Company, that he would be willing to make such sale if presented to him during the time specified in the contract. Therefore the signature of Young to the approval clause was in the nature of an offeer on the part of Young to make a sale on the terms indicated in the contract, which offer would only become binding on Young when the sale was actually ready to be executed.

*James P. Maginn* for respondent.

(1) The only obligation on Butts Realty Company agents, was to obtain the approval of the owner within ten days or to refund the earnest money. The provisions of the contract as to the title being perfect, and to be conveyed by warranty deed free from liens and encum-

brances, that if the title be found imperfect and cannot be perfected within a reasonable time, the earnest money was to be refunded and a fee not to exceed $15 be paid to the 'purchaser, and the sale to be off; the closing of the sale within thirty days from date of approval, or on or before May 21, 1909, the forfeiture of the earnest money to the seller, if the purchaser fail to comply with the terms of the contract by paying the balance of the purchase money, in cash, are plainly the terms binding on the owner and purchasers respectively, and solely, when the owner approves the sale, and not till then. (2) Whether defendants had any authority as agents of Young, the owner, when they signed "Exhibit A," and when Massey signed it is immaterial. Massey knew they had no such authority; knew the Mercantile Trust Company had such authority and sent the defendants the money, as earnest money to be paid by them, as such, to the Mercantile Trust Company as the owner's agents, in order to obtain a binding contract on the owner, by his approval, *until which time, Massey merely had the defendants' obligation to return the money, if such approval was not obtained.* (3) Under the evidence in this case there is no question of the defendants binding themselves for want of a principal. *The express terms of the contract, signed by the defendants, declare the principal to be the man who owns the property described in the contract, and declare until he binds himself to the provisions of the sale, there shall be no contract of sale.* (4) Moreover, the evidence is amply sufficient to justify the court below in finding Massey knew who the owner was, even by name, prior to his signing "Exhibit A." There is no question properly in the case of "undisclosed principal." *The contract expressly stipulates that the owner of the property must disclose himself and bind himself by his signature to the terms of sale, or there shall be no sale.* (5) There is no basis for the application, under the evidence in this case, of the doctrine of Martin v. Allen, 125 Mo. App. 636, and that of the other authorities, cited under plaintiff's Point 4, that defendants become bound to a

contract to become stakeholders of the earnest money, until it was determined whether the sale was going to be consummated or not by the vendor and vendee. Martin. v. Allen, 125 Mo. App. 636; And authorities cited by Appellant under Point 4. (6) Where the agent, acting in good faith, fully discloses to the other party, at the time all the facts and circumstances touching the authority under which he assumes to act, so that the other party from such information or otherwise, is fully informed as to the existence and extent of his authority he cannot be held liable. Mechem on Agency, sec. 546, citing numerous cases, among them: Michael v. Jones, 84 Mo. 578; Western Cement Co. v. Jones, 8 Mo. App. 373; Humphrey v. Jones, 71 Mo. 62. (7) The judgment of the court below was for the right party; and under the statute, prohibiting the reversal of a judgment except for error materially affecting the merits of the action, the consideration of refused declarations of law is unnecessary where the verdict is manifestly for the right party. Broms v. The City of Liberty, 131 Mo. 372; Burnett v. Telegraph Co., 39 Mo. App. 599; Fontaine v. Boatmen's Savings Ins., 57 Mo. 552. (8) "Exhibit A" and the receipt of Mercantile Trust Company for the earnest money, followed by the preparation of "Exhibit 4" of plaintiff's, being identical with "Exhibit A," except that the Exhibit 4 has the signatures of Young and wife, approving the sale (and approved by Massey in his letter to Hobbs of May 1, 1909, as declared by the court in defendants' declaration No. 1) *were the contract of sale between Young and Massey,* and the earnest money, sued for here, was rightfully in Young's agents' possession, and thereafter no right of action could or did accrue in favor of Massey as against the defendants, for the return of said money. Welsh v. Heim Brewing Co., 47 Mo. App. 412-413; Taylor's Landlord and Tenant, secs. 35-36; Whaley v. Hinchman, 22 Mo. App. 483; Hoover v. Oil Co., 41 Mo. App. 317; Campon v. Lafferty, 43 Mich. 429; Nicol v. Burke, 78 N. Y. 580. (9) In no event was it necessary for defendants to tender a deed (though it is clear that Young was

always ready and willing to close, and no doubt tendered his deed). Massey's repudiation of the contract, on May 17, 1909, rendered it unnecessary to tender a deed. Curtis v. Sexton, 142 Mo. App. 187; Comstock v. Lager, 78 Mo. App. 390; Land Co. v. Baylor, 71 Mo. App. 99; McManus v. Gregory, 16 Mo. App. 375.

ALLEN, J.—This is an action prosecuted by the administratrix of the estate of Robert D. Massey, deceased, to recover of defendants the sum of $1000, as for money had and received. The trial below, before the court without a jury, a jury having been waived, resulted in a judgment for defendants, and the case is here on plaintiff's appeal.

The defendants are real estate brokers in the City of St. Louis, constituting a co-partnership doing business as the Butts Realty Company; and at the time here involved one Hobbs was an employee of defendants. The record shows that Robert D. Massey was a resident of Greene County, Missouri, but it appears that he had some connection with a business establishment in the City of St. Louis, and that at the time of the transaction here in question he was in the State of Arkansas. In April, 1909, he paid to defendants, by sight draft payable to their order, $1000, as constituting a payment of earnest money on the purchase by him of a certain lot of ground in the City of St. Louis, of which one Wm. C. Young was the owner. For reasons to be noted later, such purchase was never consummated; and Massey demanded said sum of defendants without avail. He died on November 7, 1909; and after his death this action was begun by his personal representative.

In the transaction in question Massey dealt with defendants' employee Hobbs by correspondence. Hobbs was not permitted to testify; and the facts involved appear mainly from the documentary evidence adduced and certain admissions of counsel. Only two witnesses testified, one being Young, the owner of the property, and the other one Rietz, an employee of the Mercantile Trust

Company, of St. Louis, which institution was Young's agent for the sale of his said property.

The record discloses that as early as March 27, 1909, Massey was in correspondence with Hobbs in regard to the purchase of the lot mentioned, which, it appears, Massey contemplated purchasing for the purpose of erecting thereon an apartment building. On the last mentioned date Massey wrote a letter to Hobbs referring to the "lot deal," stating that he would send to his counsel (Judge Hough) in the City of St. Louis a check for $1000 with instructions to deliver it to Hobbs, and adding: "I want you to stick to me in this matter Joe . . . until the house is completed. And give me whatever assistance you can, with a view to pulling the thing off in a successful way. It may be that I will be in St. Louis by the first of May in which case I will certainly call on you to advise me; with regards, and thanking you very much for your kindness in looking after my interest in this matter, I remain," etc.

On April 3, 1909, Massey again wrote to Hobbs, saying: "As you appear to have fallen down on the lot proposition with the Mercantile Trust Company, my check for $1000 earnest money you will please return," etc. It is to be inferred that this check was returned to Massey. In a subsequent letter to Hobbs, of date April 17, 1909, Massey made inquiry regarding the purchase of the lot. On April 21, 1909, Hobbs, as defendant's agent, wrote to Massey sending him a copy of a "contract of sale"—referred to also as an "earnest money receipt"—dated said April 21, 1909, and asking Massey to sign the paper and return it with his check for $1000. Three days later Massey, who was then at Bentonville, Arkansas, wrote to Hobbs acknowledging receipt of the latter's last mentioned letter, and enclosing a draft for $1000 drawn by him on the Carleton Dry Goods Company of St. Louis, payable to the order of the Butts Realty Company. He also signed the contract and returned it, or caused it to be returned, to Hobbs. This instrument, signed also by "Butts Realty Co., by J. M. Hobbs," is as follows:

"CONTRACT OF SALE"

St. Louis, Mo., April 21, 1909.

"Received of Robert D. Massey the sum of one thousand dollars ($1000) earnest money, and as part of the purchase money for a certain parcel of vacant property, situate in the city of St. Louis, State of Missouri, in the city block No. 3875, . . . . being the northwest corner of Belt and Waterman Avenues, which property is this day sold to said Robert D. Massey for the total sum of nineteen thousand ($19,000) dollars, payable as follows: In cash.

"The title to said property to be perfect of record and in fact, and to be conveyed by warranty deed free from liens and encumbrances, except taxes, both general and sprinkling, for the year 1909 and thereafter.

"If the title be found imperfect and cannot be perfected within a reasonable time, above earnest money is to be refunded together with a reasonable fee for examination of title not to exceed fifteen ($15) dollars, and this sale is to be off.

"The sale under this contract to be closed within thirty days from date of approval, or on or before May 21, 1909, and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the earnest money is to be forfeited to the seller; sale to be closed at office of Butts Realty Co., St. Louis. This contract and sale is subject to the approval of the owner.

"It is further agreed that this contract will be approved within ten days or earnest money refunded.

"I agree to the above terms and conditions:

"R. D. Massey.

"I hereby approve the above sale, . . . 1909.

BUTTS REALTY Co., Agents,

By J. M. HOBBS."

The evidence shows that the contract, thus signed by Massey, and the draft executed by him, when received by Hobbs as the representative of the Butts Realty Company, were delivered by the Butts Realty Company to the Mercantile Trust Company, agent of

Young, the owner of the property.; the Butts Realty. Company having indorsed the draft to the order of the trust company. The trust company thereupon executed to the Butts Realty Company a receipt which was introduced in evidence, over plaintiff's objections, and which is as follows:

"St. Louis, April 26, 1909.

"Received of Butts Realty Co., Agts. for R. D. Massey, One thousand and no/100 Dollars, earnest money account purchase lot 110 ft. x 205 ft. on Belt in C.-B. 3875 as per Butts Realty Co. E/M contract dated April 21, 1909, property owned by W. C. Young and wife

"MERCANTILE TRUST COMPANY,

"By M. F. REITZ."

What arrangement or understanding there was between the Butts Realty Company and the Mercantile Trust Company in regard to the matter does not directly appear from the evidence. By admission of defendants' counsel it does appear, however, that the Butts Realty Company "were acting with the Mercantile Trust Company," did not claim to represent Young and had no authority to bind him.

On or about April 27, 1909, Young and his wife signed a duplicate copy of the aforesaid contract, approving the sale. It appears that this paper, also bearing date April 21, 1909, had been prepared by Hobbs, acting for the Butts Realty Company, the body thereof being an exact copy of the instrument signed by Massey, supra; and Hobbs appended thereto both the names of Massey and that of the Butts Realty Company, by himself as agent, so that the signatures thereon appear as follows:

"R. D. Massey, by Butts Realty Co., agents, per J. M. Hobbs.

"I hereby approve the above sale, April 27, 1909.

"WILLIAM C. LOUNG.

"LUCY M. YOUNG."

"BUTTS REALTY Co., Agents,
"By J. M. HOBBS."

On April 27, 1909, the last mentioned copy of the contract, bearing the signatures of Young and his wife, were sent by Hobbs to Massey with a letter in which the former stated that he would have the title to the property examined. It appears that the original paper signed by Massey remained in the possession of the Mercantile Trust Company. The trust company cashed the check for $1000; and Young testified that he received a check from the trust company, which, he thought, was for $900.

To Hobb's letter of April 27, 1909, enclosing the copy of the contract bearing the signatures of Young and wife, Massey replied by letter of May 1, 1909, stating: "Yours of the 27th rec'd. also the contract with the owners attached, all of which is very satisfactory to me," etc.

From the testimony of Young it appears that on May 8, 1909, he and his wife executed a deed to the property, which he delivered to the Mercantile Trust Company.

On May 12, 1909, Hobbs sent to Massey a certificate of title to the property, obtained from the "Title Guaranty Company." The portion thereof here pertinent is as follows: "According to the St. Louis City records, the fee simple title to said real estate is vested in William C. Young, provided as to the eastern ten feet, that all parties in interest were parties to instrument recorded in book 1638, page 257, vacating western ten feet and eastern ten feet of Forest Avenue eighty feet wide, now Belt Avenue, reduced to sixty feet in width."

In sending this certificate of title Hobbs wrote to Massey, calling his attention to the clause therein referring to the "eastern ten feet" of the lot, saying, among other things: "I have looked up this deed and it is a conveyance of a private street, Forest Avenue, to the city, making it sixty feet wide and deeding the ten feet on each side to the adjoining property owners, and the title company has guaranteed this to Young, and so showed it in the title."

The next letter in the record from Massey to Hobbs is dated May 16, 1909, and refers to a letter from Hobbs of date May 13 (meaning, perhaps, May 12). In this letter Massey says: ''This complicates things . . . You have mussed things up to such an extent that you have got me all balled up. If you can straighten things up as I want it the deal may go through; otherwise I want my $1000 back.'' On the following day Hobbs replied to that letter, stating that there was ''no complication in the matter at all,'' and that there would be no difficulty in regard to the title. On the same day Massey wrote to Hobbs as follows:

''Yours of May 12th received, inclosing certificates of title and notwithstanding your beliefs to the contrary, I must say that this does not suit me a little bit, so you will oblige me by returning the check for $1,000 earnest money at once; address me here at Bentonville, care Strode-Long Merc. Co., and don't forget to enclose the check for $1,000, otherwise I shall be compelled to place it in my lawyer's hands, with instructions to act at once. A word to the wise should be sufficient.''

On the following day (May 18) Hobbs wrote another letter to Massey, referring to the certificate of title, and saying: ''Send this to me at the earliest moment, as the matter I mentioned has been investigated and found to be clear. The title is O. K. and I want it to show in the certificate.''

To this, so far as appears from the record, Massey did not reply. On May 29, 1909, Hobbs received from attorneys in the City of St. Louis representing Massey a letter, addressed to ''Jos. Hobbs, Esq.'' demanding the immediate return of the $1000 earnest money. A further letter from the same counsel appears in the record, of date June 22, 1909, addressed to the Butts Realty Company, making demand upon the latter for the return of said sum.

Twenty-one declarations of law were offered by plaintiff. Seven thereof were given as offered; thirteen were refused; and one was given after being modified.

For defendant six declarations of law were given, including one in the nature of a demurrer to the evidence. In the view which we take of the case, it is necessary to set out these instructions or to refer *seriatim* to the various assignments of error made by appellant. This is for the reason that our examination of the record convinces us that plaintiff failed to establish a prima-facie case; and that the result below was consequently right and should not be disturbed.

## I.

Lest we appear to give tacit sanction to the ruling below excluding the testimony of Hobbs, offered by defendants, it may be well to say that under the ruling of the Supreme Court in the recent case of Wagner v. Binder, 187 S. W. 1128, 1. c. 1151 et seq., Hobbs, as defendants' agent, was not disqualified by reason of Massey's death. [And see, also, Allen v. Jessup, 192 S. W. 720; Lafferty's Admr. v. Kansas City Casualty Company, 209 S. W. 942.] It was therefore error to refuse to permit Hobbs to testify; and doubtless his testimony would have served to throw much light upon some matters that are not made clear by the evidence adduced in this record. But since defendants prevailed below, the error in question is not one arising on this appeal.

## II.

The theory of appellant's learned counsel that defendants contracted in behalf of an undisclosed principal whom they had no present authority to bind, whereby they became liable to Massey for the return of the earnest money in case the title proved defective, is not tenable. It is obvious that the "contract of sale," quoted above, was intended to become a contract between Massey and the owner of the property in the event that the latter approved the sale. By signing it, defendants acknowledged the receipt of the earnest money, and became obligated to return the same to Massey unless

the owner should approve the sale within ten days; but upon such approval the provisions of the contract relating to the title and the refunding or forfeiture of the earnest money, were clearly stipulations which became binding upon the purchaser and the owner.

Whether Massey knew the owner's name when he signed the contract and paid the earnest money does not appear. It does appear, however, beyond doubt, that he knew that defendants had no authority to bind the owner, that the Mercantile Trust Company was the owner's agent, and that defendants were dealing with that company in undertaking to bring about the contract between the owner and Massey for a sale of the property by the former to the latter. Whether Massey knew the owner's name prior to the latter's approval of the contract of sale is wholly immaterial; the contract upon its face shows that the owner of the property was the other party to be bound thereby, and that until he bound himself there was to be no binding contract of sale. And when the owner accepted the terms and provisions of the proposed contract, and obligated himself to carry them out on his part, he became entitled to receive the earnest money, constituting a part of the purchase price. The earnest money here sued for was therefore rightfully in the possession of Young, or his agent, the Mercantile Trust Company, after the consummation of the contract of sale between Massey and Young; and we perceive no possible theory upon which defendants may now be held liable, in any event, for the return thereof to this plaintiff.

There is nothing in the record indicating that the defendants were to become "stakeholders" or trustees of this fund, charged with the duty of holding it after the contract between Massey and Young had been consummated. In this respect the facts are unlike those present in Martin v. Allen, 125 Mo. App. 636, 103 S. W. 13, and in Coble v. Denisen, 151 Mo. App. 319, 131 S. W. 719, and in other cases of like character cited and relied upon by appellant.

Learned counsel for respondents insists that the evidence establishes that in the transaction in question the Butts Realty Company—which, in dealing with Massey, acted through Hobbs—was in fact Massey's agent. As appears above, there is evidence in the record tending to support this view. But it was admitted below that the Butts Realty Company was "acting with the Mercantile Trust Company," and it may be that the realty company and the trust company had some agreement or understanding as to commissions if the former procured a purchaser; though this does not directly appear. But taking the view of this matter most favorable to plaintiff, when a contract was consummated, through defendants' efforts, between the purchaser and the seller, and the earnest money paid over to the latter, any question subsequently arising as to the refunding or forfeiture of the earnest money, under the terms of the contract, was a matter between Massey and Young, the owner. In this connection—to dispose of appellant's argument touching the same—we may say that in that clause of the contract providing for a forfeiture of the earnest money to "the seller" in the event that the sale was not closed by May 21, 1909, owing to the failure or neglect of the purchaser to comply with the terms of the contract, by the term "seller" was obviously meant the owner of the property.

## III.

But were we to concede, *arguendo*, that appellant's learned counsel are correct in their theory that the Butts Realty Company became bound upon this contract as a principal—as the "seller" therein named—and hence liable for the return of the earnest money, in the event that Massey was entitled to rescind the contract and demand the return thereof, it would avail appellant nothing. The contract clearly contemplated that the purchaser, Massey, should make or cause to be made an examination of the title to the property; and if the title was found imperfect and could not be perfected within a reasonable

time, then the earnest money was to be refunded to him, with a reasonable fee, not exceeding $15, to reimburse him for the expense of such examination. He was not entitled to demand the return of the earnest money, as for a defect in the title, without allowing a reasonable time in which to perfect the title. Hobbs, in fact, procured the certificate of title mentioned and sent it to Massey. This certificate recited that the fee simple title to the property was vested in Wm. C. Young, provided, as to the eastern ten feet, that all parties in interest were parties to a certain recorded instrument.

Whether, by introducing this certificate, (admitted without objection) plaintiff made a prima-facie showing that the title was not, upon the date of said certificate, perfect "in fact and of record," we need not say. The matter referred to in the certificate, if it can be said to have rendered the title imperfect of record, was obviously one which the seller might be able to readily remove. By the terms of the contract the seller was entitled to a reasonable time within which to perfect the title, if found imperfect. But when this recitation appeared in the certificate sent to Massey, he promptly and unequivocally repudiated the contract, refused to proceed further therewith, and demanded the return of his money, threatening to sue therefor. And as shown above, he paid no heed to the fact that defendants' agent, Hobbs, at once notified him that all doubt had been removed as to the title, requesting a return of the certificate so that the title company might show that the title was in all respects clear and perfect. Whether or not the matter thus asserted by Hobbs was in fact true, the record does not disclose; but this matters not, since obviously Massey was not entitled to repudiate the contract without affording a reasonable opportunity for the perfection of the title, if any imperfection existed. And by such repudiation and refusal to perform on his part, persisted in by him, in disregard of the terms of the contract, he forfeited his right to the return of the earnest money, under the clause of the contract providing that if the sale be not closed within

the time specified, "owing to the failure or neglect of the purchaser to comply, with the terms" of the contract, "the earnest money is to be forfeited to the seller."

It is true, as suggested by appellant's counsel, that the record does not show that the deed said to have been executed by Young and wife and left with the Mercantile Trust Company was ever tendered to Massey. But clearly such tender, if otherwise necessary, was entirely dispensed with when Massey unequivocally repudiated the contract and persisted in refusing to perform on his part. Under such circumstances, a tender of the deed would have been a useles act and one which the law will not require to be performed. [Curtis v. Sexton, 142 Mo. App. 179, l. c. 187, 125 S. W. 806.]

The judgment below was, we think, clearly for the right party. As said, this action is one for money had and received. It proceeds upon the theory that defendants have come into possession of $1000 belonging to Massey, which in equity and good conscience they ought to be required to pay over to this plaintiff as Massey's personal representative. The facts in evidence do not sustain the averments of the petition. It does not appear that defendants came into possession of any money belonging to Massey for which they should be required to account to plaintiff, but that Massey's money, represented by the draft which passed through defendants' hands, went, in fact, to the party entitled to receive it; and furthermore, the evidence shows that Massey, by reason of his breach of the contract entered into by him, forfeited his right to demand the return of said earnest money.

It is contended that the receipt set out above, executed by the Mercantile Trust Company to the Butts Realty Company, was improperly admitted in evidence, for the reason that it was not competent to prove by this means that the Butts Realty Company was Massey's agent. But in view of what we have said above, the mat-

ter is here inconsequential, since the admission of this receipt, if error, was harmless error.

The judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.