Adolph **BEXTERMUELLER** and Luella
Bextermueller, Plaintiffs-Respondents,

v.

Lambert **BUSKEN** and Lucy Busken,
Defendants-Appellants.

No. 31489.

St. Louis Court of Appeals.

Missouri.

March 17, 1964.

Niedner, Niedner & Moerschel, Paul F. Niedner, St. Charles, for appellant.

Dalton & Dalton, Donald E. Dalton, St. Charles, for respondent.

BRADY, Commissioner.

In this action the plaintiffs-respondents sought to recover $7,000.00 paid by them to the defendants-appellants as earnest money on an unconsummated contract of sale for the purchase of a farm. The parties will be referred to by their designation in the trial court. Plaintiffs received a jury verdict, and defendants have perfected their appeal from the judgment entered in accordance with that verdict.

The plaintiffs' theory of recovery was based upon their contention that defendants had violated the provisions of the contract of sale with respect to a transfer of title " * * * perfect of record and in fact * * *." The exact provisions of the contract with respect to this issue of title were: "The title to said property is to be perfect of record and in fact, and is to be conveyed by Warranty Deed free from liens and encumbrances, excepting such as may be noted above, * * *." Later in the contract the following provisions are stated: "If title be found imperfect and seller cannot perfect same in a reasonable time, the above mentioned deposit is to be refunded, together with additional amount to cover cost of examination of title, thereby releasing the purchaser therefrom. The sale under this contract is to be closed on or before January 24, 1957 and if not closed by that date, owing to the failure or neglect of the purchaser to comply with the terms herein, said deposit is to be forfeited to the seller, but for this cause the buyer shall not be released from the fulfillment of their part of this contract, if so determined by the seller. * * *" No issue was made at the trial as to the meaning of the clause denying the buyer release from the contract " * * * for this cause * * *."

The encumbrances which are noted in the foregoing provisions of the contract as permitted are set out in that portion of the contract dealing with the price of the farm and how it was to be paid. The total price was $32,500.00 which was payable as follows: " * * * Purchaser will assume

First Deed of Trust in the amount of: Twelve Thousand Seven Hundred Fifty and 00/100 Dollars with Interest 5½% for a period of seventeen years, Sevene (sic) Hundred Fifty dollars to be paid on the principal each year. Interest and principal due on December 1st of each year. Seller will take back Second Deed of Trust of 2,750.00 with interest at the rate of 5% for a 5 year period. 300.00 to be paid each year beginning December 1st, 1958. Prepayment privilege at any date."

The plaintiffs alleged that the defendants had violated the provisions of the contract with respect to a transfer of title because on the date of closing there were the following liens and encumbrances against the property, none of which were noted in the contract: First, a deed of trust to a Mr. and Mrs. Wesling under date of January 16, 1953, given by the defendants to secure payment of a note for $14,000.00 and payable in monthly installments of $92.40; and second, a deed of trust dated December 15, 1954, given by the defendants to a trustee for a Mr. Kummer to secure payment of a note for $2,000.00 due one year from date. The plaintiffs further alleged that defendants knew of "* * * said imperfections in title * * *" and informed the plaintiffs of them on January 24, 1957, but neglected and refused to perfect the title "* * * although a reasonable time, to-wit, more than thirty days, after said closing date on January 24, 1957, was allowed to lapse; * * *" that on the 23rd of February, 1957, "* * * Plaintiffs elected to rescind said contract and so advised Defendants, * * *" and demanded repayment of their earnest money; and that plaintiffs had performed all the conditions on their part under the contract.

The defendants' theory of the case was that the plaintiffs never informed them prior to the date of closing or on that date of any defects in title. Prior to the date of closing the plaintiffs had informed them that they were not going to consummate the sale because the plaintiffs no longer liked the farm but said nothing of any alleged defects in title. On the date of sale the only defects complained of, according to the defendants, were defects in the contract of sale. The defendants' position was that they were prepared to deliver title in accordance with provisions of the contract, because they had arranged for the deeds of trust then on the property to be released simultaneously with the closing of the sale and to be released of record immediately prior to the recording of the warranty deed from the defendants to the plaintiffs. By failing to inform them of the existence of any alleged defects in the title and what these defects were, the defendants contended the plaintiffs had failed to give them the reasonable time called for in the contract to correct these defects. The defendants' answer also raises the defense of laches, but in view of the disposition of this appeal made herein, this matter need not be further referred to in this opinion.

█ █ The defendants state eight allegations of prejudicial error. Two of these allegations contain three and one contains four subpoints. Certain of them were not raised by defendants in their motion for new trial and will not now be considered by this court and for that reason will not herein be stated. Those allegations of prejudicial error properly preserved for our consideration deal with the trial court's action in giving Instruction No. 1; in excluding certain evidence; in overruling defendants' motion for new trial without notice to them and without giving them an opportunity to be heard; in refusing to grant a mistrial; and in the court's conduct during trial. We think the defendants' position as to the allegation of error dealing with the trial court's conduct of the trial is well taken and will accordingly limit our statement of the factual situation to that contention. The plaintiffs deny any error with respect to the conduct of this trial but place their main reliance upon the contention that even if such error was committed, it could not be prejudicial, because the error could not materially affect

the merits. We will first pass upon that contention since, if it is correct, any error that may have been committed could not be prejudicial so as to require reversal. § 512.160(2), RSMo 1959, V.A.M.S. While space prevents setting them all out, a recital of only some of the events that occurred during the trial of this case will serve both as a factual basis for the allegation of error herein ruled and also illustrate why this court cannot sustain plaintiffs' contention that any error committed could not materially affect the merits.

During his opening statement defendants' counsel attempted to tell the jury that his evidence would show that the plaintiffs never informed the defendants that there was anything wrong with the title and, in fact, had informed the defendants that plaintiffs were not going through with the sale for other reasons. He was prevented by the court from so doing. Counsel next attempted to go into this matter when he examined Mr. Busken, who had been called by the plaintiffs as an adverse witness. Again he was prevented from doing so, and the following occurred in the presence of the jury: "BY MR. DALTON: Just a minute. I object to that, Your Honor, as calling for a statement about this contract which is in violation of the Parole Evidence Rule, and this question calls for answers which concern matters involved in this contract. It's in violation of the Parole Evidence Rule." The court then engaged in questioning defendants' counsel in the hearing of the jury. During that questioning he asked counsel the following two questions: "BY THE COURT: Would not all negotiations be concluded and incorporated in the contract itself unless the contract was ambiguous?" Defendants' counsel answered that in his opinion the Parole Evidence Rule would not apply and stated the basis for his opinion. The court then asked, again in the hearing of the jury, "BY THE COURT: But are not all negotiations terminated by the drafting of a contract to which the parties subscribe their names?" Defendants' counsel

answered that his position was that he could show such negotiations provided they do not contradict the contract. The court then stated, " * * * I don't so understand the Rule. The objection will be sustained and the answer will be stricken. The answer in the positive will be stricken."

Counsel then asked the defendant Busken if he had informed the plaintiffs of the existence of these two deeds of trust. An objection was made and sustained, and the following offer of proof made by defendants' counsel: " * * * Well, I offer to prove by this witness that if he be permitted to answer the question that he would testify that he had informed Mr. Bextermueller, prior to the time of execution of this contract, that there were two deeds of trust on the property, one the Wesling Deed of Trust and the other the Kummer Deed of Trust." Later, while Mr. Busken was still on the stand as plaintiffs' witness, his counsel attempted to question him as to his arrangements to pay off the Kummer note and deed of trust on the day of closing and being prevented from so doing made the following offer of proof: " * * * I would offer to prove by this witness if he were permitted to answer that this witness would state that he had instructed Mr. Kummer to be present and available at the closing of this real estate transaction on the 24th day of January, 1957, together with his deed of trust and note."

During the cross-examination of plaintiff Bextermueller by defendants' counsel, counsel inadvertently transposed the figures $2,750.00 with $2,000.00. There was no objection, as it was an obvious inadvertence, but the court said, " * * * Now wait a minute, wait a minute, wait a minute. $2750.00 is not less than $2000.00. BY MR. NIEDNER: Excuse me. BY THE COURT: Now, let's get along. BY MR. NIEDNER: Q $2000.00 is less than $2750.00. BY THE COURT: *There is no connection between the two. Now let's go on to a more pertinent matter.*" (Emphasis supplied.) At another point during that cross-examination, again without any ob-

jection being made, the trial court interrupted defendants' counsel, while he was attempting to develop his theory of defense and directed him to *"* * * stay within the facts of the case and not some side issue to create an erroneous impression."* (Emphasis supplied.)

Defendants' counsel called Mr. Wilson, the real estate agent in this transaction, as a witness and among other things was asked whether he had informed the plaintiffs that the second deed of trust was to be released prior to transfer of title to plaintiffs and where this was to be done. There was no objection, but the court stated: *"* * * Now wait a minute; that hasn't a thing to do with the deal itself. Now, let's limit it to the transaction and not some matter of fiction. * * *"* (Emphasis supplied.) Defendants' counsel attempted to go into the matter in another way, and again without any objection being made, the court stated: *"* * * Wait, wait, wait now, that doesn't have a thing to do with the transaction itself, Mr. Niedner; now, let's limit it to the transaction itself and not the recording; that's after the deal is closed. That's what I'm trying to say. Let's not confuse this Jury with some collateral matter. * * *"* (Emphasis supplied.) During Wilson's testimony defendants' counsel attempted to make an offer of proof, and the court dealt with it in this fashion: *"* * * The objection will be sustained. BY MR. NIEDNER: May I make a proffert, Your Honor? BY THE COURT: No, I don't see any need to. You might say—you make your offer and I'm going to make a comment, I'll tell you that. BY MR. NIEDNER: Well, I'll accept the ruling of the Court then. BY THE COURT: All right."* (Emphasis supplied.) Wilson did testify that the abstract was ready for the plaintiffs and shown to them about the middle of January. It was on this occasion that he informed the plaintiffs how the Kummer Deed of Trust would be released at the date of closing. The plaintiffs then made no complaint. He also testified that he had all the statements and deeds necessary to close the sale in conformance with the contract prepared and ready for plaintiffs on the date of closing.

While Mr. Kummer, holder of the note and second deed of trust, was on the stand, the defendants' counsel attempted to prove by his testimony that he was ready and willing to accept payment and release the second deed of trust. The following occurred: "Q Were you willing to accept payment of that note? A Yes, sir. BY MR. DALTON: I object to that, Your Honor, again as calling for a conclusion. BY THE COURT: *Well, it's immaterial. It wasn't paid on that date. It's immaterial.* The objection is sustained. * * *" (Emphasis supplied.) An offer of proof was then made and denied. That offer was as follows: "BY MR. NIEDNER: I would offer to prove by this witness, if he were permitted to answer the questions to which objections have been made and the objections have been sustained, that this witness was prepared and was ready to go to Warrenton or to Wentzville or to Wentzville and then to Warrenton to deliver the deed of trust and note, the $2,000.00 second deed of trust which he held, and that it was prearranged for him to do that immediately upon call from the real estate agency; and that by prearrangement that had been taken care of and that he was in a position, prepared, willing and able to produce that deed of trust and note at the time immediately prior to the closing of that real estate transaction between the Buskens and the Bextermuellers. BY THE COURT: All right. The offer will be denied because it is the opinion of the Court that it does not constitute a proper defense to this cause, to the Plaintiffs' cause of action."

The witness Denny was called by the defendants in another effort to prove the plaintiffs had never informed the defendants they objected to the existence of the second deed of trust as a defect in the title. The following occurred: "* * * Did he ever state, to your knowledge, any reason for his refusal to go through with this transaction relating to the title?" There

was an objection which was sustained, and defendants' counsel attempted to cover the matter by another question. Again an objection was sustained, and defendants' counsel stated: "* * * I'd like to make an offer of proof. BY THE COURT: That isn't necessary, Mr. Niedner, I ruled on the question. Now, there is a proper way of proving what you want to prove and you have not done it in that manner. *An offer of proof is not proper at this time, Sir."* (Emphasis supplied.) The court was then asked, "BY MR. NIEDNER: If the Court please, am I denied the opportunity to make an offer of proof at this time?" and answered, "BY THE COURT: For the questions raised, yes, sir."

The defendants' witness Wesling, holder of the first deed of trust, was called and asked whether he had agreed to changing the payment schedule on that deed of trust to conform to the contract. There was no objection but the court excused the jury and delivered a stern lecture to the defendants' counsel which included the following remarks concerning counsel's attempts to introduce evidence supporting his theory of the case: "* * * Now, I feel like counsel for defendants is doing it intentionally to make the Jury feel sorry for him because I rule against him and I told you so yesterday in your constant offers of proof. Now, I would like to declare a mistrial at this time and I think I'd be doing an injustice to the plaintiffs to do so. Now, now, now, I don't know your age, Mr. Niedner, and it doesn't make any difference. Apparently you've had several years of experience in the practice of law and if you don't know the difference between right and wrong then you ought to have someone else in here because I think you have acted improperly throughout this trial, I think unethically you have acted. Now, I've been practicing law for almost thirty-five years. and I've been on the Bench a number of years and I know the difference between the right way to proceed and the wrong way to proceed and ethics require that you be honest and that you be honorable. Now, when you go into these subterfuges as to custom and all these things, and if I'm wrong why didn't you or don't you come up with some law this morning to show that I'm wrong." The court continued at some length in this same vein, and at the conclusion of the remarks of the court defendants' counsel replied, "* * * If Your Honor please, I would like to say that—I would like to persist in attempting to persuade the Court to my view of this thing; that is my position as I advocate, and I would like to ask the Court to consider the wording of the contract in which it says that if the title is imperfect and cannot be perfected within a reasonable time—I believe, Your Honor, that would suggest to any dealer in this transaction to, the dealer to the purchasers attorney, Your Honor, that if he had a complaint concerning the title that he, in fairness, he owed a duty, Your Honor, to inform us what it was he complained about. And, I believe that any purchaser under these curcumstances ought to say this is what we don't like, you correct this. And it is my purpose and effort to show this Jury and Your Honor that the parties did not, as a matter of fact, they attempted to conceal their reason, if they had one. And I would like to point out to the Court that how very simple, how very simple it would have been had Mr. Dalton informed anybody what his complaint was, how easily it could have been straightened up. They had, as the Court has repeatedly said, $7,000.00 to go do it with. Your Honor, does it appear logical under those circumstances that they would have forfeited this whole deal and projected themselves into this mass of litigation when they had the simplest opportunity to do it? Doesn't it indicate to Your Honor that they didn't, counsel, Mr. Dalton, deliberately attempted not to tell them? I think I have a right to show that, Your Honor. BY THE COURT: Mr. Niedner, if there had been a hidden defect, if there had been a dubious defect. But here, you all—everyone of your witnesses knew all about that $2,000.00 deed of trust—BY MR. NIEDNER: But,

Your Honor, I have attempted to show by three different witnesses that the holder of that deed of trust was ready, able, willing, poised and knew of the transaction whereby he was supposed to go to Warrenton and accept payment on this deed of trust and release it of record in the presence of the buyer at that time. BY THE COURT: All right. Now, you've got a contract that said this deal will be closed on the 24th day of January. Your parties set the time at 10:00 o'clock a. m. Now, your contract says, 'The title to said property is to be perfect of record and in fact, * * *.' Now, now, now, you can't just go and draw on your imagination. 'Title is to be perfect of record and in fact', now, that means that deed of trust, it isn't set out in here as the other one was, that deed of trust should have been satisfied of record and in fact and these—And you talk about money; what was the $7,000.00? Why didn't—if your man didn't have the money why didn't he take $2,000.00 out of that $5,000.00 and pay that note and satisfy it of record, comply with his contract? BY MR. NIEDNER: Because he didn't have any knowledge nor did anybody know that that's what this whole complaint was about. BY THE COURT: Well, that's just silly, Mr. Niedner, that's just silly and we're spinning our wheels. Now, if you think you've got reversible error why don't you let us enter judgment for this plaintiff and get on to some more important business. I, I think this is one of the silliest lawsuits—BY MR. NIEDNER: Well, that's for the Court to enter judgment for the plaintiffs. I can't do that." Later in that same discussion the following statements were made by defendants' counsel and the court: "BY THE COURT: I'm telling you you haven't made a lawful defense and I don't, I don't think you can come up with one. And I think you're wasting your time and my time and everybody elses time in this lawsuit. BY MR. NIEDNER: Well, I knew nothing to do but persist in showing what evidence I had, Your Honor. BY THE COURT: Well, let me caution you now, Mr. Niedner. I don't think you and I have ever met till

yesterday but down our way your conduct would be considered most unethical, you would be subject to disciplinary action. BY MR. NIEDNER: Well, Your Honor, I would like at this time to move the Court orally for a mistrial because I think the comments of this Court in the presence of the Jury and in the absence of the Jury have so completely reflected the predisposition of the Court to the merits of this case and have prejudiced my case before the eyes of the—BY THE COURT: If there is any prejudice done the appellate Court is going to have to say so. I'm not going to say so." The defendants' counsel then made the following offer of proof as to Wesling's testimony: "* * * I would like to offer to prove by this witness. if he were permitted to answer the questions. that he would testify that he was present at the closing for the purpose of accepting the mortgage of the Busken Farm under the exact terms as they were stated in the contract; that is, $750.00 per year in principal and instead of the monthly payment which he had theretofore been receiving from Mr. Busken, all in accordance with the request of the Bextermuellers."

While Mrs. Busken was on the stand, the following occurred: "Q Had you ever after that time until December of 1959, at the time that you were sued in connection with this matter, had you ever been informed by letter or by any kind of paper or conversation that the Kummer Deed of Trust—.'" There was no objection, but the court again interrupted and refused permission to go into the matter.

Mr. Busken was called as a witness in his own case, and his counsel attempted again to go into the question of whether he had ever been informed by the plaintiffs. of what imperfections they found in the title. There was no objection, but the following statements were made after the jury had been excused: "BY THE COURT: Now, Mr. Niedner, I've had just about all of the brain washing I'm goin' to have. I'm fining you $25.00 for contempt of court at this very moment for repeatedly

asking for conclusions of witnesses; repeatedly and repeatedly. Do you understand me? Now, when we resume I want you to conduct yourself as an honorable, intelligent lawyer. Do you hear me? Now, this is the last warning I'm giving you. Do you understand me, Sir? BY MR. NIEDNER: Yes, Your Honor. BY THE COURT: Do you have any questions to ask me, Sir? BY MR. NIEDNER: Yes. I would ask, like at this time to move for a mistrial in this cause—BY THE COURT: I'm not going to penalize these plaintiffs because of your continued misconduct and unethical actions. Now, do you have anything else to say? BY MR. NIEDNER: Well, if I might—BY THE COURT: (Addressing a spectator.) And if you don't like what I'm saying you come up and we'll let you pay a fine as well, sir. BY MR. NIEDNER: * * * Well, I, I do, I would like to move the Court for a mistrial because I believe the Court has acquired a prejudice against the case of my clients and has indicated that to the Jury repeatedly in his comments. BY THE COURT: That is a mis-statement of the truth and I don't care what your conclusions are. Now, if you want to make a record get the record in there and let's get this over with. BY MR. NIEDNER: Well, I can't do anything more than except to the ruling of the Court denying me the opportunity to state the reasons for my motion for a mistrial. BY THE COURT: All right. BY MR. NIEDNER: Now, I would suppose the Court would grant me time at the conclusion of this case to perfect the various papers that are necessary to appeal the contempt citation? BY THE COURT: Yes, sir, we will do that too. BY MR. NIEDNER: I don't have the where-with-all to proceed with the appellate procedure on that right now. BY THE COURT: We can appreciate that. We can understand that, Sir, yes, Sir. BY MR. NIEDNER: I don't know what procedures should be taken but I would like to ask leave to— BY THE COURT: You'd better get ready to apply for a writ of habeas corpus. * * *" It should again be pointed out

that these excerpts are but some of the occurrences of this nature that took place during this trial.

■ It is to be noted that the contract here involved did not specify a time available to the defendants to correct any defects in title. Accordingly, the time available is a reasonable time under all the circumstances. St. Clair v. Hellweg, 173 Mo.App. 660, 159 S.W. 17. In that case at 1. c. [8], the court held: "We must hold that the court erred in refusing to allow the defendant to show as a defense that, had he been permitted, he could have remedied the defects complained of within a reasonable time after they were pointed out. * * * The burden will be on defendant to show that he did in fact have such perfect title, and that he could have shown the same in the abstract, had the opportunity been given him to do so. If he can make this proof, he has a complete defense to this action. If he did not have such title, or could not have shown it in the abstract within a reasonable time, then the plaintiff should prevail."

The case of Massey v. Butts, 204 Mo.App. 55, 221 S.W. 153, is very similar to that in the case at bar in the respect that the contract in each case provides for the return of the deposit if title is found imperfect and could not be perfected within a reasonable time and in that the seller was to retain the deposit if the purchaser failed to close the sale due to no fault of the seller. In the Massey case upon the day of closing the purchaser objected to the title, refused to proceed further and demanded return of his money. This court held that the contract clearly contemplated that the purchaser should make or cause to be made an examination of the title, and if he found it imperfect, he was to allow a reasonable time for the seller to correct the defects and that absent the allowance of this reasonable opportunity to perfect the title, the buyer could not thereafter demand return of his deposit. It has also been held that where a purchaser in effect repudiates a contract

by objections to the title, where those objections are not made in good faith, he is prevented from recovery of the earnest money paid by him. In re First National Bank of Adrian (Dalton v. Cauthon), 207 Mo.App. 115, 230 S.W. 358. It is likewise held that the purchasers cannot demand return of payments made where a vendor was endeavoring to comply with the contract in all respects and had done nothing to the purchaser's injury. Shupe v. A. J. King Realty Co., Mo.App., 29 S.W.2d 230.

The plaintiffs contended the title was imperfect in that the contract called for the payment of the Wesling deed of trust which was to be assumed by the plaintiffs in the amount of $12,750.00, at the rate of $750.00 each year on the principal whereas the abstract showed the note and deed of trust held by Wesling with the defendants was in the amount of $14,000.00 and was to be paid at a rate of $92.00 a year. It will be recalled that Wesling was asked whether he agreed to change his note and deed of trust to conform to the contract. No objection was made, but the court intervened and severely reprimanded the defendants' counsel. Nevertheless, counsel did succeed in dictating into the record an offer of proof on this issue whereby Wesling would have testified that such was the case and that he had been requested to do so by the plaintiffs. Certainly, this is a defense to the plaintiffs' contention the Wesling deed of trust constituted a defect in title and also went to prove defendants' contention plaintiffs had never informed them they regarded the Wesling deed of trust as a defect in title within a reasonable time so as to allow them to correct it.

The plaintiffs also contended the Kummer deed of trust constituted a defect in title requiring return of their deposit. Offers of proof were made that both the defendant Busken and Kummer would have testified that the plaintiffs in fact knew of the existence of this second deed of trust; that it had never been stated as a defect on the title by the plaintiffs and that Kummer was prepared to release it simultaneously with

the closing of the sale. Certainly, this evidence went to whether plaintiffs' objections to the title were made in good faith and whether they could have been corrected, if defendants had been notified of them, within a reasonable time.

Upon reading this transcript the inescapable conclusion is that the defendants had several defenses to the plaintiffs' cause of action and were prevented from presenting any of them by the trial court's actions as set out herein. Accordingly, the plaintiffs' contention that whatever error may be found cannot be prejudicial as it could not affect the merits is without merit. St. Clair v. Hellweg, supra; Massey v. Butts, supra; First National Bank of Adrian (Dalton v. Cauthon), supra; Shupe v. A. J. King Realty Co., supra.

Those interested in the rules and standards governing the proper conduct, actions and demeanor of a trial judge can read with profit Harms v. Simkin, Mo.App., 322 S.W.2d 930; Fleetwood v. Milwaukee Mechanics Ins. Co., Mo.App., 220 S.W.2d 614; and 88 C.J.S. Trial § 51, p. 137. The material from 88 C.J.S., supra, has been quoted with approval by the Supreme Court of this state in Duncan v. Pinkston, Mo., 340 S.W.2d 753. In the Pinkston case the court also set out the provisions of the Canons of Judicial Ethics adopted by the Judicial Conference of this state wherein it is said of a trial judge he should be patient and impartial; careful to avoid even a suspicion of unfairness by utterance, tone of voice or general attitude. The fact that this occurrence involved the same trial judge to whom the admonitions so plainly stated in Pinkston were directed leads us to doubt the wisdom of again repeating them.

We have carefully read the transcript of the proceedings at this trial, and we are unable to find even one instance where the defendants' counsel was guilty of any discourtesy toward the trial court. Neither can we find any instance where he cast a slur or aspersion toward opposing counsel

or the court, nor where he did anything but persevere in presenting his theory of the case as effectively as he could under the circumstances. The fact that the trial court vehemently disagreed with the defendants' theory of the case certainly cannot be held to authorize the court to harass counsel by warning him that he " * * * would be subject to disciplinary action * * * " for unethical conduct or by fining him for contempt or by threatening him with imprisonment by stating he had better get ready to present a writ of habeas corpus. We are aware that the Canons of Judicial Ethics recognize that a trial judge may properly intervene in order to prevent a waste of time, restrain improper conduct of counsel and to generally aid in the ascertainment of truth. As previously stated, this case does not involve any misconduct of counsel. Certainly, it cannot be held that to prevent the effective presentation of a legitimate defense is proper in order to prevent a waste of time, and it is obvious that the ascertainment of truth can seldom be forwarded where one side of a dispute can be only partly presented and even that part is subjected to disparagement by the trial court. While the trial court interjected himself into this trial on occasion where no objection was voiced as often, if not more often, than where his intervention was requested by the voicing of an objection, the frequency of these occurrences is not the test in determining their prejudicial effect. Even if we were to assume the trial court had a proper purpose in so acting, the manner by which he attempted to accomplish that purpose destroyed any hope of achieving a legitimate result.

It is obvious that from the beginning of the trial this judge indicated again and again to the jury that in his opinion defendants' theory was without legal basis and a mere attempt at subterfuge. This attitude was made apparent to the jury by the questions the trial court directed to counsel in the hearing of the jury upon ruling plaintiffs' objections to defendants' opening statement. The very wording of those questions was to indicate clearly to the jury that defendants' contentions were without merit regardless of what the evidence might show. Such matters should be covered out of the hearing of the jury. The trial judge did so when he directed the defendants' counsel to go on to a " * * * more pertinent * * * " matter; when he directed that counsel to avoid " * * * some side issue to create an erroneous impression * * * "; when he directed him to limit his questioning to the transaction " * * * and not some matter of fiction * * * "; when he referred to Kummer's testimony that he was ready to satisfy his deed of trust as " * * * immaterial. It wasn't paid on that date * * * "; and when he directed that defendants' counsel " * * * not confuse this jury with some collateral matter * * * ."

██ The exclusion of evidence cannot be considered as an allegation of prejudicial error by an appellate court in this state where the party offering the evidence fails to make an offer of proof. Mo.Digest, Appeal and Error, The defendants' counsel had to make an offer of proof in order to perfect his record and to save that matter for presentation upon appeal. It follows that if a trial court can arbitrarily deny to counsel the right to dictate into the record their offer of proof, he can prevent any consideration upon appeal as to the correctness of his own ruling as to the exclusion of certain evidence. It is obvious this cannot be the law. Yet upon two occasions the trial court refused to allow defendants' counsel to perfect his record by making an offer of proof upon issues material to his case.

This judgment should be reversed and the cause remanded to the trial court with directions to enter its order sustaining the defendants' motion for new trial. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The

judgment is reversed and the cause remanded to the trial court with directions to enter its order sustaining the defendants' motion for new trial.

WOLFE, Acting P. J., ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.

RUDDY, P. J., not participating.