MAY TERM.
1842.

Dillon
v.
Chouteau.

---

### King, adm'r. of King, et al. v. Wood.

A proposition in writing, accepted by the other party, to sell "all that piece of property known as the *Union Hotel Property*," held not to be a sufficient description of the property to take the case out of the operation of the statute of frauds, it being uncertain what property was comprehended in the words "Union Hotel Property," without resorting to parol testimony.

Appeal from St. Louis Circuit Court.

Geyer, Skinkers, & King, for Appellant.

Spalding for Appellee.

MAY TERM
1842.

*Opinion of the Court, delivered by Tompkins, Judge.*

King, Adm'r.
v.
Wood.

William B. King, in his life time, filed his bill in the circuit court of St. Louis county, sitting as a court of chancery, praying that James Wood be decreed to perform a contract, which the complainant alleged had been entered into by Wood with said complainant. After the filing of the bill the complainant died, and the suit proceeded in the name of William W. King and others, heirs and legal representatives of the complainant. The circuit court dismissed the bill, and to reverse its decree this appeal is prosecuted.

It is stated in the bill that James Wood, of Pittsburg, in Pennsylvania, being siezed in fee of a certain real estate in the city and county of St. Louis, "called the Union Hotel Property, consisting of two lots or parcels of ground, with buildings or improvements thereon, one of which lots contains sixty-nine feet on Main street, in said city, by one hundred and fifty feet in depth, more or less, bounded east by Main street ; south, by Prune street; West, by an alley twenty feet wide, which separates the same from the lot next described ; north, by a line parallel to said Prune street, and distant therefrom sixty-nine feet ; on which lot there are large brick buildings, now occupied as the Union Hotel. The other lot fronting fifty feet on Second street, and running eastwardly one hundred and fifty feet, by that width, more or less, bounded east by the above mentioned alley ; south, by Prune street ; west, by Second street; north, by a line parallel to Prune street, and distant therefrom fifty feet ; the said two lots being the same property conveyed by Scott and Rule to the said Wood in the year 1831. And that said Wood being desirous to sell the said lots and premises, in the month of November, in the year 1835, entered into a correspondence and negotiation with the complainant touching the absolute sale and conveyance of said property to said complainant ; and that on the third day of December, in that year, said Wood proposed in writing, signed by himself, to sell to the complainant the above described lots and premises, or all that piece of property known.

by the name and description of the Union Hotel, for thirty thousand dollars ; of which five thousand dollars was to be paid on the first day of April then next, at which time said Wood was to make the conveyance ; and the remaining twenty-five thousand in six annual instalments, &c. And the complainant was required to inform Wood before the first day of February then next, whether he would accede to the said proposition. But the complainant did give Wood notice accordingly of his acceptance of the proposition, and therefore it was agreed betwixt the complainant and Wood, that Wood should convey said property on the terms above mentioned ; and that Wood should be in the city of St. Louis on the first day of April then next, at which time each party should perform his part of the contract."

The statement of the case is concluded by averring the complainant's readiness and offer to perform his part of the contract, and the neglect of Wood to perform his part. The complainant makes a letter from Wood to him an exhibit in the cause, and a part of his bill of complaint.

The letter is in the words following :

"PITTSBURG, Dec. 3d, 1835.

Mr. Wm. B. King,

Sir : In reply to your proposition to rent part of my property in St. Louis, I have to inform you that I will agree to rent the premises at present occupied by Farish, and known as the Union Hotel, together with the brick warehouse occupied by Varin & Reel, for the term of five years, commencing on the first day of April next, (provided Farish, the present occupant of the premises, can be ejected in time to give you possession,) for which I will require you to pay the yearly rent of $1800, to be paid quarterly, and for the punctual payment of said rent, I will hold all the furniture and personal property on the premises bound as security for the same. I will agree to appropriate one thousand dollars of the first year's rent for the purpose of converting the brick warehouse into a dining room, and for such other repairs as may be necessary and property. In

reply to your proposition to purchase, I have to state that I will sell all that piece of property known as the Union Hotel property, for thirty thousand dollars ; five thousand dollars of which to be paid on the first day of next April, at which time I will make the conveyance, and the remaining twenty-five thousand dollars to be paid in six equal annual payments, with interest from the date, at the rate of six per cent. per year ; the payment to be secured by bond and mortgage on the property. You will advise me before the first day of next February, whether you will accept either of the above propositions, as I will not consider myself bound by either, unless you give your decision before that time, &c."

Wood, the defendant, answered, admitting the letter to be written by him; and that in December, 1835, a person calling himself the son of William B. King, the complainant, came to him at Pittsburg, and proposed to hire or buy the Union Hotel property in St. Louis, which the defendant owned, and which was occupied by said Farish as tenant: that said person represented to the defendant that his father, or that his father and himself, using the personal pronoun "we," kept a hotel in the city of St. Louis ; that for that reason they would like to buy said property, if they could, and the defendant would give them time enough, and such terms as they could comply with : and that he replied that he did not wish to sell ; that he had not been in St. Louis for a year, and did not know the value of property, nor whether it had risen. The said son of the complainant then said to him, that vacant lots in St. Louis had risen, but that improved property had not risen in St. Louis ; that he could buy the Missouri Hotel property, lying on the said square, for $16,000, and that, relying on that representation, he had written the letter mentioned in the bill of complaint. He says that the Union Hotel property means the lot first in the bill mentioned, and not the secondly therein mentioned, never having been a part of the premises leased with the said hotel, except a privy, on the east end thereof, and always leased to other persons, and for other purposes than for the use of the hotel, to wit, for warehouses. He states that in

MAY TERM.
1842.

King, Adm'r.
v.
Wood.

March, 1836, he came to St. Louis, and found property had risen at the time the conversation was had by him with the son of the complainant, and that he had been induced by the representation of said son of the complainant to offer said property at a reduced price. He admits that while he was at St. Louis the complainant requested him to convey the property to him, and that he declined doing so for the reasons above given. He insists that there is no sufficient memorandum, or note in writing, of said agreement set out in the bill of complaint. He denies that he ever made any promise in writing to convey said property, save that made in said letter, and insists that the proposal made in said letter was not accepted, but on the contrary, new terms were proposed by the complainant, besides those contained in the defendant's letter, to wit, that the property sold should be both of the lots mentioned in the bill of complaint, whereas said letter included only one of them, and the said complainant's acceptance of the proposals was only on condition that both of the said lots was to be conveyed, and the complainant had so instructed his son, and required him not to accept the proposals as set forth in the said letter of the defendant, but to require said second lot to be included in the bargain, otherwise to refuse to accede to the proposals. He also insists that the said bargain, set forth in the bill of complaint, was never completed and concluded in such a manner as to be binding on the parties, or either of them, but on the contrary that all the assurances made by the defendant, whether by letter or oral, were considered by the complainant not as the conclusion of a bargain, but as the terms proposed of a pending treaty, and that in fact they were such only.

The complainants gave in evidence the deposition of William W. King, now become one of the complainants by the death of his father, the original complainant.

This deposition, taken before the deponent became a party to the record, is as follows :

That about the 18th November, 1835, he left St. Louis for Pittsburg, and arrived there about the 1st day of December, his only business being to see Mr. Wood, the defendant, about renting or purchasing the Union Hotel pro-

perty.   He saw Wood the same day he arrived, and told him his business, and also told him to think of the matter, and to call on the deponent that evening at the Exchange Hotel.    Wood came at the appointed time, and after some conversation stated his terms to the deponent, who was agent to William B. King, the complainant.   The terms were, that he would rent the house as used by Farish, as well as the warehouse now occupied by Garvey, to be used as a dining room ; in short, the whole house, except the two stores on Main street, and the lot rented by Varin & Reel, for the rent of eighteen hundred dollars, and allow one thousand dollars of the first year's rent to be applied to the repairing of the house generally ; or that he would sell to the deponent's father the Union Hotel property, minutely describing the same, as the deponent did not then know the exact situation of the whole property, supposing it ran the same width back to Church, or Second, street, as it was on Main street.   This impression Wood corrected, drawing on paper the form of the lots, and stating the number of feet contained in each front ; that on Main street being about seventy feet, that on Church street about forty-three feet. This property he said he had bought from Scott and Rule. He complained that it had brought him but a poor interest, the rents having been badly paid on the part of the hotel, and that he would rather have the hotel shut up.

He stated that Mr. Page, his agent, had rented to Varin and Reel the lot on Church street for a small sum of money, and therefore he would take for the Union Hotel property, as there described, the sum of thirty thousand dollars ; five thousand dollars down, and the rest in six annual instalments, bearing interest at six per cent., and a mortgage on the premises to secure the latter payments and interest.   The deponent then, as agent for his father, drew up an article to be signed by Wood and the deponent; Wood did not sign it, on the ground of its interfering with the lease of the lot on Church street to Varin and Reel, and the statement had no clause making the sale subject to the said lease.   Wood then said he would bring the defendant a written proposition for his father's inspection, and allow him sufficient time

to give an answer; which he did on the third of December, saying, in case the deponent's father agreed with either proposition, he, Wood, would comply. Deponent then "*left for Weeling*," from whence he wrote his father two letters containing an exact copy of Wood's contract, and a plat of the property, as he obtained it from Wood; which plat agrees very nearly with the exact situation of the property. Deponent returned about the first of January, when he received two letters from his father, directing him, in case it was fully understood to embrace the whole property from Main to Church street, or to that effect, and that it was Wood's intention to convey the same as thus described, to notify Wood of the acceptance of his proposition, and that he would take the property. This being expressly understood by deponent from Wood's own description and drawing of the same on paper.

The deponent then goes on to state, that he communicated his father's acceptance of the proposition to Wood. His own words are:. Deponent then told him he had received by letter positive instructions to close the contract, according to the propositions contained in his letter to the deponent's father under date of the 3d of December, 1836, to which he agreed, and said it was all right, and that he would make the conveyance accordingly. Wood refused to enter into any further written agreement, saying that he was sufficiently bound, more so than the deponent's father, who might or might not take the property; and that if the sum of five thousand dollars were paid to him before the first day of April next, (before which time he would be in St. Louis,) he would execute the conveyance; and would execute such a conveyance as he had received from Scott and Rule. The deponent denied that he had ever made any false representations to Wood about the value of the property.

Two letters written by the complainant to the witness on the subject, are as follows :

"I this day wrote to James Wood to know of him if he intended to let the narrow slip running from Union Hotel to Church street; on said strip Varin & Reel have a frame warehouse, as in the copy of his letter sent to me by you,

he only sells the Union Hotel; says nothing about the other part; and if he will let the whole go, I will take it, otherwise I will have nothing to do with it, as it is out of order, and no ground to have a yard, even to put coal or wood in, and it will take five thousand dollars to put it in order, in place of one. I have requested Wood to write by return mail, so I may inform you what to do. You had better see him first. Examine his letter, and you will find I am right in his not selling the point running to Church street, whatever your understanding may be; it is not in his letter, if you have sent me a true copy. Now, if he will convey all, you may give him notice that I will take it. The two pieces of ground are separated by an alley. Farish does hold about twenty feet for the use of the hotel, on which is the back-house, but this only joins Reel's warehouse, and belongs to that lot. This strip is one hundred and fifty by thirty odd feet, covered altogether by Varin & Reel's warehouse, which is frame, and Wood speaks of a brick warehouse, which is the lower apartment of the wing of the front building, (say hotel,) &c."

The complainant's second letter to the witness is as follows:

"December 19th, 1835. I wrote to Wood to know if he intended to include all the ground running from Main street to Church, as his letter does not say that he will sell all the property, but only says, that he will sell the Union Hotel property. This letter I wrote the day before I received it. I went to the office and took out the letter written to Wood. Your last letter says, Wood agrees to sell all the ground and houses, from Main street to Church. Now if this is your understanding, and Wood will convey all the ground he owns there from Main to Church street, you are authorised to notify him that I will take it; but if he will not include the strip from the alley to Church street, I will not take the other. I will not rent the other on any terms. One thousand will not do to put it in order, and the rent is too high, &c.

To this letter is subjoined a diagram of the lots, as sent by the witness to the complainant, and on the longest side

thereof are written these words: "If Wood will convey all this, I will take it. Make it secure by an agreement."

Several witnesses, interrogated on the part of the complainant, state that thirty thousand dollars was, at the time the complainant sent his son to see Wood on the subject of the purchase, to wit, in November, 1835, a fair price for all the property which the complainant demands in his bill, and that property such as that, did not rise in value much till some time in the year 1836, and one of the witnesses says that property was at that time in rather a depressed state.

Several witnesses on the part of the defendant testify that unimproved property rose very rapidly in value in the latter part of 1835; and Page says, that there was at that time a general rise in the value of property in the city. He says he thinks that the Union Hotel property, comprehending the lot fronting on Main street, and running through to Church, or Second street, was then worth much more than thirty thousand dollars. This property partook of the general rise of property in 1835, but he did not think that the lot fronting on Main street partook so largely as some others in the neighborhood, *"on account of there being a hotel on it."*

The points made by the defendant, resisting the decree of the circuit court are:

1st. That false representations were made by William W. King, the agent of the complainant, that caused him to sign the letter which he wrote to the complainant, and that consequently inadequacy of price resulted from the proposal to take $30,000 for the property.

The second point, as alleged in the answer, is that there was no sufficient note in writing, of the said agreement, charged in the bill of complaint, so as to take the case out of the statute of frauds.

The third point there made is, that the terms of the defendant, as stated in his letter, never were accepted by the complainant, King, and that the whole matter was nothing more than a negotiation, which was never closed.

These points are copied from the brief the plaintiff in error, and as they appear to me to comprehend every thing material in the cause, I shall review them.

MAY TERM.    The third point appears to me to be plainly in favor of the
1842.     complainant.  Two witnesses, to wit, William R. King and
King, Adm'r. Madison Miller, testify positively that they did in due time
v.       inform Wood, the defendant and appellee, that the complain-
Wood.     ant accepted his proposition for the sale of the Union Hotel.
property; while John McKee, a witness of the defendant,
states that in December, 1835, he passed through St. Louis,.
going to Pittsburg, and that while he was at St. Louis, King,.
the complainant, proposed to him either to join in the pur-
chase of the property, or to purchase it himself, and rent it
to the complainant.  The witness stated that he refused to
do either; and that some weeks after his arrival at Pittsburg,
sometime early, he thinks, in February, he received from the
complainant a letter, "Requesting him to say to James
Wood, the defendant, that he, King, would take the tavern
house and lot in St. Louis, at the sum of $30,000, but that
he would not make the first payment, to wit, five thousand
dollars in cash, which, the witness understood from the com-
plainant, the defendant required in hand, but made other prop-
ositions, not material to be here noticed.  The statements of
the witnesses of the complainant are not irreconcilable with
those of McKee.  He stated from recollection only the time
at which he received this letter, early in February ; he did
not have the letter in his possession, and might not have
been accurate in the recollection of the time; or this letter,.
even if written earlier than that to William W. King, might
have been accidently delayed after it was mailed

On the first point made by the defendant as above stated,.
it is enough to say, that statements of the witnesses on each
side about the value of property when the younger King
left St. Louis to go to Pittsburg to purchase this property,.
differ from each other so much, that the witness King, when
he made propositions to Wood, as agent for the com-
plainant, ought, in my opinion, to be acquitted of the charge
of making false representations to deceive Wood, the de-
fendant.

We are then brought to the second point.  The letter
written by Wood to the complainant, and signed by Wood,
is a sufficient note in writing to charge the defendant, and

make him liable to convey, under a decree of a court of equity, the Union Hotel property ; this is not denied by the defendant's counsel, and I consider the matter so plain, that I shall not refer to any of the authorities cited by the counsel for the appellants.

But it still remains to be determined what is to be considered as embraced in the phrase "Union Hotel property." William W. King, a witness on the part of the complainant, asserts very positively (as it is above stated,) that Wood distinctly declared to him that he understood thereby all the property demanded in the complainant's bill of complaint, and furnished him a diagram of that property; and Wood, in his answer, denies that he included in the property mentioned in his letter to King, the whole of the property demanded in the bill of complaint, and says that the "Union Hotel property," means the lot first in the bill mentioned, and not the lot secondly therein mentioned."

A witness examined on the part of the complainant, was asked if he was acquainted with the "Union Hotel property," in St. Louis, heretofore belonging to James Wood, and if so, to state what it is, and whether he had any negotiations about purchasing the same, &c. This witness stated that in his negotiations he included all the property of the Union Hotel from Main street back to Church, or Second, but failed to state what was understood to be the Union Hotel property. None of the witnesses testified as to what was generally understood to be included in the property called the "Union Hotel property."

It is contended by Mr. King, on the part, of the complainants, that Wood, in his letter to the complainant, furnishes strong evidence that by the term "Union Hotel property," he meant the whole of the property extending from Main to Second street, as claimed in the complainant's bill of complaint, and that this evidence thus furnished by Wood himself, connected with the testimony of William W. King, ought to prevail over the denial of Wood. contained in his answer. Wood's letter, he says, contained a proposition to rent a part of the Union Hotel property, and also another proposition to sell the whole, and contends that Wood in-

MAY TERM, 1842

King, Adm'r.
v.
Wood.

MAY TERM.
1842.

King, Adm'r.
v.
Wood.

tended to rent the part east of the alley, and to sell all the property comprehended betwixt the two streets, as demanded in the bill. The letter of Wood to the complainant shows on its face that it was written in answer to one of King's on the same subject. In the beginning of the letter he says, "In reply to your proposition to rent part of my property in St. Louis, I have to inform you that I will agree to rent the premises at present occupied by Farish, and known as the Union Hotel, together with the brick warehouse occupied by Varin & Reel." And then he makes a proposition to allow $1000 to defray the expenses of fitting that warehouse for a dining room.

In the latter part of his letter Wood says, "In reply to your proposition to purchase, I have to state that I will agree to sell all that piece of property, known as the Union Hotel property, &c."

Wood, in this letter, evidently makes a distinction betwixt the terms "Union Hotel" and "Union Hotel property." By the Union Hotel, he means the part occupied by Farish only, and therefore he proposes to annex to the hotel the part occupied by Varin & Reel, as a warehouse, for a dining room. This brick warehouse appears from the evidence to be a wing of the building called the Union Hotel, and it is to be presumed that the complainant did not propose to rent that part.

Woods, then, when he proposed to sell, consistently enough designates it thus : "I will agree to sell all that piece of property known as the Union Hotel property," &c. without going into a minute detail of it as he had done when he proposed to rent. In the proposition to rent, it was necessary to enter into detail, in order to let the complainant know that he offered to rent him a part not before occupied as part of the tavern. In the proposition to sell, he uses the general terms, all that piece of property, &c. It could not be presumed that the complainant would wish to purchase or the defendant to sell a part of the house. This seems to me to be a very reasonable construction of the letter of Wood to the complainant; and this also is the construction that must have been put on that letter by the complainant him-

self; for, in a letter written to William W. King, the witness above mentioned, after the receipt of Wood's letter, he says, "examine his letter, and you will find I am right, in not selling the part running to Church street, whatever your understanding may be, it is not in his letter, if you have sent me a true copy." The complainant, it is evident, lived in St. Louis and kept a public house, and must be supposed to know as well as any body what property was generally understood to be comprehended in the term Union Hotel property; and if we could not from the context of the defendant's letter to him understand its meaning, yet still the complainant's exposition ought to be taken in preference to that of any other person, as it is against the claim here set up. But in my opinion, Wood sufficiently shows on the face of his own letter that he offered to sell to the complainant only so much of the property demanded as lay east of the alley; and as the complainant, when it most interested him, understood that letter correctly, and when he was most apt to express that understanding candidly, did declare that he so understood him, I feel still more assured that such was the meaning and intention of Wood as expressed in that letter.

There was then, in my opinion, no note or memorandum in writing made by Wood, on which the complainants can have a decree against Wood to convey to them the property in this bill demanded.

The complainants deny that they ever assented to purchase the property lying east of the alley on the terms set forth in the bill of complaint, and this being all that Wood, as it seems to me, assented by his letter to sell, the judgment of the circuit court dismissing the bill must be affirmed.

MAY TERM.
1842.

King, Adm'r.
v.
Wood.

A proposition in writing, accepted by the other party, to sell "all that piece of property known as the *Union Hotel property*," held not to be a sufficient description of the property to take the case out of the operation of the statute of frauds, it being uncertain what property was comprehended in the words "Union Hotel property," without resorting to parol testimony.