CHARLES R. WOODSON, RESPONDENT, v. LEO-GREENWALD VINEGAR COMPANY, APPELLANT.

Kansas City Court of Appeals. May 4, 1925.

1.—Account Stated—Where Plaintiff Based His Action upon an Account Stated, He Could Not Recover upon Any Other Theory. Where plaintiff based his action upon an account stated, he could not recover upon any other theory.

2.—Same—Account Stated Must be Founded upon Previous Transaction Creating Relation of Debtor and Creditor, and an Unexecuted Contract, Unenforceable Because Within Statute of Frauds, Cannot Form Basis of an Account Stated. Account stated must be founded upon previous transactions creating relation of debtor and creditor and cannot be made the instrument to create original liability, and an unexecuted contract, nonenforceable because within the Statute of Frauds, cannot form basis of an account stated.

3.—Frauds, Statute of—Contract Alleged in Petition on Account Stated Presumed to Have Complied with Statute of Frauds. Where petition alleged contract for sale of apples in action upon an account stated, the presumption is that contract complied with Statute of Frauds.

4.—Same—In Action on Account Stated no Defense That Original Contract Creating Relation of Debtor and Creditor was Within Statute of Frauds. Where question was whether parties had agreed on amount due plaintiff from defendant, it is no defense that original contract, which was basis of account stated, was within Statute of Frauds.

5.—Appeal and Error—Defense of Statute of Frauds, Not Raised in Trial Court, Unavailable on Appeal. Where defendant failed to raise defense of Statute of Frauds in trial court, such defense is not available on appeal.

6.—Account Stated—Refusal to Admit Evidence Showing Improbability of Defendant Entering into Contract upon Which Account Stated Was Based, Held Error. In action upon account stated for amount due plaintiff for two carloads of apples, where answer was a general denial, refusal to admit evidence, as to poor condition of apples, offered by defendant, to show improbability that defendant entered into agreement upon which account stated was based, held error.

*Corpus Juris-Cyc. References: Accounts and Accounting, 1CJ, p. 699, n. 98, 99; p. 702, n. 31; p. 726, n. 61, 62 New; p. 727, n. 75 New; p. 728, n. 80, 81, 82, 92. Appeal and Error, 3CJ, p. 701, n. 87. Frauds, Statute of, 27CJ, p. 315, n. 34.

:Appeal from the Circuit Court of Buchanan County.—Hon. Thos. B. Allen, Judge.

REVERSED AND REMANDED.

*Culver & Phillip* for appellant.

*Ben J. Woodson* and *Strop & Mayer* for respondent.

ARNOLD, J.—This is an action upon an account stated whereby plaintiff seeks to recover the sum of $512.71 for two carloads of apples. Among other activities plaintiff owns and operates an apple orchard near Agency, Mo. Defendant is a corporation engaged, among other things, in the manufacture of cider and vinegar at St. Joseph, Mo.

The petition alleges that plaintiff entered into a contract with defendant whereby he agreed to sell, and defendant agreed to buy, all of plaintiff's bulk cider apples for the year 1918, at $1.25 per hundred pounds f. o. b. Agency, Mo.; that pursuant thereto plaintiff placed on board cars at Agency two carloads of apples, one containing 25,920 pounds and the other 19,925 pounds and consigned them to defendant at St. Joseph, Mo.; that at the contract price the apples amounted to $576; that on the arrival of the cars defendant claimed a deduction of $7.50 for 600 pounds shortage and $2.85 for excess freight charge because the car was loaded to less than minimum weight. These deductions were allowed by plaintiff.

The petition further alleges: "Plaintiff further states that at said time or shortly thereafter, the defendant claimed that said two carloads of apples were of inferior quality, and that before it would accept said apples and pay for same, it was entitled to a reduction in price; and thereupon it was agreed between plaintiff and defendant that in addition to the two items of deduction on account of freight and shortage of weight, as above stated, the defendant would be entitled to and was allowed a deduction for 4000 pounds of apples at the contract price of $1.25 per hundred weight, which deduction on account of the alleged claim that said apples were inferior, amounted to the sum of $50. Plaintiff states that all the above matters were agreed to by him and the defendant agreed to pay the balance of the purchase price, to-wit, $512.71, after making the proper deductions as above stated. Plaintiff states that the above apples' were delivered and accepted by the defendant under the facts as herein stated and under the agreement as above set forth."

The answer was a general denial, and upon the pleadings thus made the cause went to trial to a jury.

Plaintiff testified that on October 15, 1918, he sold defendant, over the telephone, what apples he had, and that he shipped them on October 15th and 16th; that thereafter Mr. Leo, representing defendant, called him by telephone to come to the plant and look at the shipment; that he went with Mr. Leo, examined the apples and found about ten per cent of them damaged and not sound cider apples; that Leo said about 4,000 pounds were thus damaged and that he would so report to the factory. Plaintiff then went to the uptown office of defendant and there met Mr. Alex Leo and the latter said his brother had reported there should be a deduction of 4,000 pounds; that plaintiff replied that 4,000 pounds at ten cents per hundredweight should be deducted and that Mr. Leo then called Mr. Greenwald and another officer of the corporation over the telephone and said to them, "Doctor Woodson is here and he is willing to take either a deduction of 4,000 pounds or ten cents off." That Leo then turned to plaintiff and said, "That is all right, take the 4,000 pounds off. Mr. Greenwald says he has talked to the man at the plant."

Plaintiff stated that he and Leo then figured it up and found the shipment was 600 pounds short through an error by the man who weighed the apples at Agency, and at $1.25 per 100 pounds, this shortage amounted to $7.50; that there was also an overcharge in freight due to lack of the minimum weight in one of the cars; and also a $50 deduction was figured off because the Jonathan apples in the shipment were in bad shape; and that left $512.71 due plaintiff on the shipment. Leo then turned to someone in the office and asked, "Have you any checks signed in blank?" That a lady from another room answered, "No checks signed in blank." Leo then said, "Doctor, Mr. Greenwald will be back in fifteen or twenty minutes; if you will wait, I will make you a check." Plaintiff replied that he was in a hurry and could not wait and said, "Just make me the check this evening and mail it to me," to which Leo replied: "We will make it this evening and mail it to you and you can get it in the morning."

On behalf of defendant, Haskell Leo testified that plaintiff called at the plant to see the two cars, that witness showed them to him and plaintiff discussed the proposition of figuring 4,000 pounds loss, but that witness made no comment; that after examining the apples the witness reported their condition to his brother Alex Leo at their uptown office. Defendant then offered to prove by witness that rotten apples are not fit to make cider or vinegar and are not used for any purpose; that witness found the apples rotten. The ruling of the court on this offer is as follows:

"Since this suit is a suit on a stated account, the agreement to pay the first amount as the balance of settlement, the court holds it is immaterial as to whether the apples were rotten, or as to whether they could make cider out of rotten apples."

220 Mo. App.—53.

Counsel for defendant then explained to the court that the offer was not made "because we contend that if any account stated was had the defendant could escape liability by showing that the apples were rotten, but as a circumstance to show the improbability of the defendant making any such contract, and in support of its contention and as a circumstance to show that no such settlement was actually ever made."

The court sustained plaintiff's objection to the offer. Defendant then offered to prove by the witness that upon examination the apples in the cars were found to be rotten and full of worms, being absolutely unfit for the manufacture of cider or vinegar, or for human consumption; that the vinegar company refused to receive them and that they were dumped by the railroad company. Upon objection by plaintiff this offer also was refused by the court. The same proof was offered by defendant in the examination of other witnesses, but in each instance the offer was refused.

Alex Leo, for defendant, testified that plaintiff called him over the telephone and stated that he had two cars of sound cider apples for sale and that the witness offered him $1.25 per hundredweight f. o. b. plaintiff's station, with privilege of inspection, and that the offer was accepted; that witness received a report from Haskell Leo from the plant that the apples were in bad condition on arrival; that he immediately called plaintiff and suggested he go down to see them as they were in bad condition; that plaintiff later came to defendant's office and said he had seen the apples and as nearly as he could figure there was a loss of about 4,000 pounds in the two cars and that he would be willing to settle on that basis, or ten cents a hundred. Witness stated he told plaintiff he had received a report from the factory that the apples were in bad condition and he (witness) had better inspect them and would try to do so that day; that he did go down town that evening with Mr. Greenwald and a Mr. Long, foreman of the plant, and made an inspection.

Upon objection of plaintiff the witness was not allowed to state the condition of the apples as disclosed by his inspection. The witness flatly contradicted the testimony of plaintiff relative to the contract and account stated at the uptown office and declared there was no agreement as to settlement and no proposition was made by witness to plaintiff that if he would reduce the price further the apples would be received. There was an offer to prove by this witness that the apples were not received by defendant and that they were dumped by the railroad company, but on objection by plaintiff, the offer was refused by the court. At the close of plaintiff's evidence defendant demurred thereto upon the ground that the facts proved failed to establish an account stated. The demurrer was overruled. Verdict

and judgment were for plaintiff in the sum of $512.71. A motion for new trial was ineffectual and defendant appeals.

Defendant urges as an elementary proposition of law, to which there can be no valid objection, that when plaintiff bases his action upon an account stated, the evidence must establish an account stated, and if it fails to do so, the plaintiff cannot recover upon any other theory. It is also insisted that an account stated must be founded upon previous transactions creating the relation of debtor and creditor between the parties; that it cannot be made the instrument to create an original liability; it merely determines the amount of the debt where previous liability existed. [1 C. J. 699.] The same authority, at pp. 701-2, is to the effect that if an unexecuted contract is within the Statute of Frauds, so that it is not enforceable, it cannot form the basis of an account stated.

These are statements of the general rules and are employed by defendant in leading up to his position that where a contract within the Statute of Frauds is declared upon in the petition, it may not become the basis of an account stated because the basic contract is within the Statute of Frauds. An examination of the petition shows that it alleges a previous contract between plaintiff and defendant which the law presumes to have been in writing (Sharkey v. McDermott, 91 Mo. 647; Railroad v. Wingerter, 124 Mo. App. 426, 430) and therefore not subject to the objection that it was within the Statute of Frauds. We discern in this a plea to establish the relation of debtor and creditor between the parties. Such relation being thus established, the petition further alleges that the parties by subsequent agreement settled the amount of defendant's liability, and it is upon this account stated that plaintiff bases his cause of action.

As we understand defendant's position in this respect it is that if the original contract which is the basis of the account stated is within the Statute of Frauds, then the account stated is likewise barred by said statute. We cannot accept this position as meritorious. The petition alleged and it was agreed by the parties that the suit was on an account stated. The question to be submitted to the jury, therefore, was whether the parties had agreed upon the amount due plaintiff from defendant.

The prior contract was not relied upon by plaintiff for his cause of action, and it must be concluded that whether or not the same was in writing is not decisive of the question involved herein. Moreover the record fails to disclose that defendant raised the question of the Statute of Frauds in the court below. Under the rule stated in Cash v. Clark, 61 Mo. App. 637; Schmidt v. Rozier, 121 Mo. App. 306, and Gifford v. Willman, 187 Mo. App. 29, 34, we must hold that such defense is not available here. There was no error in the action of the trial court in overruling defendant's demurrer to the evidence.

The remaining point for determination is the charge that the court erred in refusing the offers of defendant to prove the condition of the apples, and to show that they were rotten and absolutely worthless.

Since the petition alleges an account stated and the answer is a general denial, the question of whether or not there was in fact an account stated was put squarely in issue. Appellant concedes the rule that where a suit is based upon an account stated and it is admitted there was an account stated, then the party ,charged cannot avoid settlement except for fraud, accident or mistake, and such defense must be pleaded. But defendant insists that having denied that there ever was an account stated, he may show any fact or circumstance which would go to establish the improbability of his ever having entered into the contract. The general rule applicable to this situation is stated in 1 C. J. 728, as follows:

"The rule that an account stated can only be attacked for fraud, mistake, or manifest error does not apply to a case where the existence of the account stated is denied. Upon the issue whether an account was in fact stated or not, the party denying the alleged statement of account may show the inherent impracticability of his agreement to the account, and for this purpose may show the general nature of the circumstances of the business between the parties, and the character of the items of the alleged account, and his objections thereto, notwithstanding that for other purposes the court will not inquire into the character of the original items in the absence of fraud or mistake." [See, also, Baker v. Griffin, 86 N. Y. Supp. 579; Coffee v. Williams, 103 Cal. 550, 37 Pac. 504.]

In Kaminsky v. Mendelson, 54 N. Y. Supp. 1010, the court said:

"It is true that an account stated is conclusive upon the parties to it, unless impeached for fraud or mistake, and that an account stated can only be opened where the party paying shows clearly that he has been misled by fraud, mistake or manifest error. But in the case at bar, the existence of the account stated is put in issue; and it was clearly competent for defendant to prove the payment of the items upon which plaintiff's claim is based, were it only for the purpose of supporting defendant's contention that there was no account stated."

In Koegel v. Givens, 79 Mo. 77, it was held that in an action upon an account stated, if necessary, evidence of earlier transactions as a foundation for the settlement and in explanation thereof, is admissible, but an inquiry into the merits or demerits of the prior transactions, as ground for recovery or defense, is inadmissible.

Applying this rule to the case at bar, we think there can be no doubt that where the defendant, by the interposition of a general denial, denies that there has been an account stated and a promise to

pay, any evidence which tends to show that there was actually no account stated is admissible, and this applies as well to testimony tending to show the improbability that defendant entered into such contract. [Barr v. Lake, 147 Mo. App. 252, 259.]   The case of Brewing Co. v. Berney, 90 Mo. App. 96, cited by plaintiff, is found upon examination not to be in conflict with the rule above announced. We therefore hold, for the reasons above stated, that the court erred in refusing to admit defendant's evidence offered for the purpose of showing the improbability that defendant entered into the agreement upon which the alleged account stated is based.   The judgment is accordingly reversed and the cause remanded for a new trial. *Bland, J.,* concurs; *Trimble, P. J.,* absent.

