EARL JOSE AND LIZZIE JOSE, RESPONDENTS, v. BERTHA S. AUFDERHEIDE, APPELLANT.[*]

Kansas City Court of Appeals. June 14, 1926.

*Corpus Juris-Cyc. References: Accounts and Accounting, 1CJ, section 305, p. 699, n. 99; Contracts, 13CJ, section 626, p. 602, n. 52; section 746, p. 662, n. 50; Frauds, Statute of, 27CJ, section 321, p. 270, n. 79; section 438, p. 361, n. 41; Money Paid, 41CJ, section 12, p. 17, n. 11; Specific Performance, 36Cyc, p. 654, n. 56; p. 665, n. 93; p. 687, n. 27; Vendor and Purchaser, 39Cyc, p. 1357, n. 46; p. 1562, n. 56.

*James Booth* and *Virginia Booth* for respondent.

*Frank J. Quinn* for appellant.

BLAND, J.—This is a suit upon an account stated. There was a judgment in favor of plaintiffs in the sum of $1015 and defendant has appealed.

The facts show that on the 6th day of February, 1925, plaintiffs entered into a written contract with the defendant wherein they agreed to buy from her a house and lot situated in the town of Bland. The purchase price of the house and lot was $4500; $2500 was to be paid in cash when possession of the property was given and $2000 was to be paid by plaintiffs' giving a mortgage upon the property for that amount in favor of defendant. Possession of the property was to be given plaintiffs "within sixty days from date of contract, weather conditions considered." The contract provided that if either the first or second parties refused to comply with the terms of the contract, "a forfeit of $100 must be paid."

The house in controversy was occupied by defendant as her home and she desired to build a house in which to move before giving possession of the property sold to plaintiffs. It was thought that sixty days would be sufficient time in which to build the house but owing to the fact that there might be delays on account of bad weather, the clause "weather conditions considered" was inserted. Parol testimony was admitted to show that this clause meant that defendant was to have more than sixty days in which to give possession of the house sold to plaintiffs, provided that on account of bad weather a longer time would be required to build the new house. Defendant needing money with which to build the new house, plaintiffs, after the contract was signed, agreed to pay her $1000 in cash, which they did on March 3, 1925. After the contract was signed plaintiffs took possession and occupied the barn on the premises purchased, planted cherry trees in the yard, installed a pump in the kitchen of the house and planted flowers and shrubbery, but did not take any further possession of the property.

The new house was completed on May 29, 1925. Plaintiff, Earl Jose, testified that "after they started this house they never lost a day on account of weather conditions;" that on April 29, 1925, he demanded of defendant possession of the house plaintiffs had purchased but defendant refused to give possession, saying that she had no place to which she could move her personal effects. On May 13, 1925, the witness, in company with one Lichte, called upon defendant and told her that on account of the way she had treated him about giving possession of the house he would refuse to take the property he had purchased; that he was going to sue her for "my $1000 and I am going to sue you for the $1000 forfeit on the contract, and for damages." Defendant said she did not want a lawsuit and that if the witness was not satisfied she was willing to pay his money back rather than have such a suit. The witness said "all right" and asked for a check for the $1000 and defendant said that she was going to Hermann the

following morning and to St. Louis and that she would bring the witness the check.

When defendant returned she brought no check but brought her attorney. The witness had an interview with the attorney who asked him if he did not know that defendant had made a deed to the property and placed it in the hands of a Mr. Neese, the banker, to be delivered to the witness. They went to the bank and there found a warranty deed made out in favor of plaintiff, dated the 7th day of May, 1925. The attorney then tendered the deed to the witness. This was the first the witness knew of any deed having been executed. The witness further testified that the plaintiffs were at all times prior to the 13th day of May ready, willing and able to perform their part of the contract. Lichte corroborated the witness's testimony as to what occurred on May 13th.

Defendant testified that plaintiffs at no time demanded possession of the house or mentioned the subject to her; that on the 13th day of May the plaintiff, Earl Jose, came to the house with Mr. Lichte and told her that he was not going to take the property because "you won't give me possession;" that said plaintiff told her that she had broken the contract by not giving possession of the house and that he was not going to take the property. Defendant denied that she had broken the contract but testified that she said to Jose "why haven't you asked me for possession, that was our verbal agreement?" Defendant told him that on the 7th of May she had delivered a deed to Mr. Neese at the bank and that the latter "will give it to you whenever you pay the balance due and give me a deed of trust of $2000." Said plaintiff again refused to take the property and said that he was going to sue defendant for $1000, "and $1000 damages." This ended the interview. Defendant further testified that she had at no time agreed to return the $1000 and never agreed to adjust any difference between the parties; that when she delivered the deed to Neese she told him that "whenever Mr. Jose left the $1500 balance due in cash and the deed of trust, when he made the deed of trust for $2000 to turn the deed over;" that on May 13th the new house was so far finished that she could have moved into it and vacated the premises purchased by plaintiffs; that she went to Hermann and her attorney came back with her and that she offered Jose the deed to the premises but he refused to take it.

Mr. Neese testified that the deed was delivered to him by the defendant on May 7, 1925, with the instructions testified to by defendant but that defendant did not tell him to notify Jose of the deposit of the deed for them and that he had never done so. Mr. Weise, who built the new house for the defendant, testified that plaintiff, Earl Jose, talked to him during the progress of the building and told him at the beginning of the construction that "It didn't seem we was quite

getting along as fast as we might, but he said it was pretty muddy. . . . You are getting along fine, but if it takes a little bit longer it is all right, I am perfectly satisfied;'' that ''he told me at one time he didn't care when we finished.''

The first count of the petition is for money had and received; the second count pleads the contract of purchase *in haec verba*, the payment of the $1000 and alleges—

''That the description of the real estate attempted to be described in said contract is so vague, indefinite and uncertain as to render said contract void.

''That on the 13th day of May, 1925, plaintiffs and defendant settled their accounts and all matters of difference between them and agreed upon a balance of one thousand dollars ($1000) being due from defendant to plaintiffs thereon, and said defendant then and there expressly promised and agreed to pay plaintiffs said sum of one thousand dollars ($1000).''

The petition further alleges that defendant had refused to pay the $1000 and asked for judgment for that amount and interest. The answer consists of a general denial as to the first count of the petition and as to the second count admits the receipt of the $1000 by the defendant but denies that the description of the real estate sold was so vague, indefinite and uncertain as to render the contract void and denies that on May 13, 1925, the parties ''settled their accounts and all matters of difference between them'' and denied that it was agreed that one thousand dollars was due plaintiffs or that she promised to pay the same to them. The answer then asks for the specific performance of the contract. The cause was tried by the court as a suit in equity.

We think that taking the evidence in its most favorable light to plaintiffs, there is nothing in it authorizing a recovery by plaintiffs in this case on either theory pleaded in their petition. Plaintiffs' evidence tends to show that the parties on May 13, 1925, attempted to effectuate a mutual rescission of the contract but as there was no consideration for the agreement entered into at that time, it was not effectual for the purpose intended. It is well settled that where a contract is wholly executory it may be rescinded by mutual agreement, no other consideration being necessary, but if it is not executory, a voluntary giving away or surrender of a valid right accrued under the contract is ineffectual unless supported by a valid consideration. [Stoedter v. Turner, 237 S. W. 141; State ex rel. v. Cox, 250 S. W. 374; Zerr v. Klug. 121 Mo. App. 286.] Here the facts show that the contract was not wholly executory but was partially performed upon the part of the defendant.

If plaintiffs had been in a position to contend on May 13th that defendant had been in default in the performance of her part of the contract, it might be said that plaintiffs impliedly agreed to settle the

whole matter by the return by defendant of the amount of money that had been paid by them upon the contract, waiving their right to damages by reason of such default, or any other right that they might have as the result thereof. If such had been the situation, there would have been a consideration received by defendant for entering into the contract for rescission, but we are satisfied that plaintiffs were not in a position to claim that defendant was in default at that time. We need not pass upon the question as to whether the time for delivery of the possession of the house to plaintiffs by the defendant, was of the essence of the contract (time was not mentioned in the contract as being of the essence), but assuming that it was and that defendant was obligated to deliver the possession of the property sixty days after the date of the contract and, therefore, that on April 29, 1925, the time possession was demanded of defendant by plaintiffs, the latter were entitled to possession, there was no tender of the things that plaintiffs were required to do under the terms of the contract, on the part of plaintiffs at that time or any other time. The written contract upon its face, though purporting to be formal, strongly indicates that it was not drawn by an attorney and is ambiguous in a number of particulars. It is not so, however, in reference to the requirement that plaintiffs should pay the sum of $2500 when possession of the property was to be delivered to them, but it is ambiguous as to at what time the contract was to be finally consummated by the delivery of the warranty deed and deed of trust in the sum of $2000. However, plaintiffs' evidence tends to show that it was the intention of the parties that the deal be consummated when possession by plaintiffs was taken of the property.

The acts to be performed by the parties to the contract were mutual and dependent and a tender of the performance by plaintiff was necessary to enable them to claim a breach of contract on the part of defendant. [13 C. J. 662.]

"The word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement required him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the same sense in which those terms are used in reference to the kind of agreements which we are now considering." [Smith v. Lewis, 26 Conn. 110, 119.]

See, also, Primm v. Wise & Stern, 126 Iowa 528, 530. The fact that defendant would not give plaintiffs possession upon the 29th day of April when possession was demanded of her, did not dispense with such tender on the part of plaintiffs. [Osgood v. Skinner, 211 Ill. 229, 235, 236.]

Plaintiffs' evidence tended to show that they were ready, willing and able to comply with their part of the contract but this evidence falls short of that necessary to show a compliance on the part of plaintiffs with their part of the contract as in addition to such evidence there should have been facts tending to show a tender such as we have indicated should have been made. Therefore on May 13, 1925, plaintiffs were not in a position to claim a breach of contract on the part of defendant and there was no consideration for the alleged rescission of the contract. Under such circumstances of course plaintiffs could not maintain their action for money had and received, although they might have done so had there been a valid rescission of the contract. [41 C. J., p. 17.]

Of course, the action could not be maintained under the count alleging an account stated.

"An account stated must be founded on previous transactions of a monetary character creating the relation of creditor and debtor between the parties; the admission of indebtedness must refer to a past transaction or subsisting debt. An account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed." [Parker & Son v. Clemons, 80 Vt. 521, 524.] [See, also, Woodson v. Leo-Greenwald Vinegar Co., 272 S. W. 1084; I. R. C. L., pp. 209, 210.]

However, defendant insists that the court erred in refusing to decree a specific performance of the contract. Defendant was not entitled to this remedy for several reasons; one being that the description of the property in the contract was not sufficiently definite to satisfy the Statute of Frauds. This description is as follows:—

"100 feet front beginning at the west line of the Christian Church property in Block No. 13 of Boettcher First Addition to the town of Bland."

That this description is wholly insufficient will be seen from the following authorities: Scarritt v. M. E. Church, 7 Mo. App. 174; King v. Wood, 7 Mo. 389; Weil v. Willard, 55 Mo. App. 376; Fox v. Courtney, 111 Mo. 147, 150; Ringer v. Holtzclaw, 112 Mo. 519. And there was not a sufficient performance of the contract to take it from without the Statute of Frauds. [36 Cyc. 686, 687, 654, 665; Walker v. Owen, 79 Mo. 563; Adair v. Adair, 78 Mo. 630; Tatum v. Brooker, 51 Mo. 148; Reynolds v. Reynolds, 45 Mo. App. 622.]

It is insisted by plaintiffs that if the contract was void as not complying with the Statute of Frauds in the matter of the description

of the property to be conveyed, plaintiffs are entitled to recover back the amount of money they have paid upon it. The contract was not wholly void. It was optional with defendant whether she wanted to insist upon the protection of the statute. There is no evidence that defendant ever repudiated the contract but the record shows that she was at all times willing to go ahead with it, but that she was willing to rescind it in order to avoid a lawsuit. She placed a deed in the hands of her banker containing the full legal description of the property to be conveyed. Even now she is attempting to enforce the contract by praying for the specific performance of it. Plaintiffs could not in this action recover back the money that they paid upon the contract as long as defendant has been willing to convey the land and has done nothing which would give plaintiffs the right to rescind the contract. [McGowan v. West, 7 Mo. 569, 570, 571; Binion v. Browning, 26 Mo. 270, 271, 272; Bank v. Lyons, 220 Mo. 538, 569, 570; Ranck v. Wickwire, 255 Mo. 42, 58.]

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

### On Motion for Rehearing.

The fact that defendant told plaintiff, Earl Jose, on April 29, 1925, that she would not give him possession because she had no place to which she could move her personal effects, did not dispense with tender on the part of plaintiff because it then appeared that a tender would have been unavailing. There had been no previous conduct on the part of defendant showing that such a tender would not have been accepted. [Defeo v. Goodwin, 287 S. W. 1075, 1078; 13 C. J. 661.]

The motion for a rehearing is overruled.