Arintha HELLRUNG and J. M. Wittels, Plaintiffs-Appellants,

v.

Emil E. HOECHST and Elsa A. Hoechst, Defendants-Respondents.

No. 50133.

Supreme Court of Missouri,

Division No. 2.

Nov. 9, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1964.

Burton M. Greenberg, St. Louis, London & Greenberg, St. Louis, of counsel, for plaintiffs-appellants.

Albert A. Michenfelder, Jr., Robert C. Jones, Clayton, Ziercher, Tzinberg, Human & Michenfelder, Clayton, of counsel, for respondents.

BARRETT, Commissioner.

This is a three-count action by J. M. Wittels (Arintha Hellrung is a straw party) against Emil and Elsa Hoechst to recover damages for breach of a real estate contract. Count two for actual and punitive damages for fraud has been abandoned. In count one Wittels sought $110,000 damages and the return of $5,000 earnest money for breach of contract while in count three he sought only the return of the earnest money. At the close of the plaintiffs' evidence the court sustained the defendants' motion for a directed verdict and the plaintiffs have appealed from the judgment entered upon that order.

The subject matter of the contract is the Steinberg Estate, a sixteen room mansion on a twenty-nine acre tract of land in St. Louis County. On October 22, 1954, Wittels, an investor and real estate dealer with forty years' experience, made an earnest money payment of $5,000 and entered into a written contract with the Hoechsts in which they agreed to sell and he agreed to buy the Steinberg Estate for the total price of $115,000. The property was subject to two deeds of trust, a first securing a $30,000 note and a second securing $19,000. The closing date of the contract was "on or before November 22, 1954." On or before that date Wittels was to give the Hoechsts a "return deed of trust" in the total sum of the two encumbrances then on

the property, $49,000, and make a "(c)ash payment of $66,000, of which the earnest money ($5,000) is a part." The sale was to be closed at the office of the Wittels Investment Company "under the usual closing practices of the St. Louis Real Estate Board." These practices were set forth on the back of the printed form contract (prepared at the direction of Wittels) which provided, as far as material here, that "Title shall be merchantable" and "Seller shall furnish a general warranty deed, subject to * * * general taxes payable in current year" and subject, of course, to the specified indebtedness of $49,000. As to earnest money and the purchaser, insofar as involved here, the practices provide that "if purchaser wrongfully refuses to close, earnest money is to be forfeited."

In support of his claim that the Hoechsts had breached the written contract Mr. Wittels reviewed the contract terms and said that assuming the deeds of trust totaling $49,000 and the earnest money payment of $5,000 his "cash payment" would have been $61,000. But, he said, two or three days prior to the closing date he was served with two levies against the Hoechsts for federal taxes, these levies and "warrant(s) for distraint" were dated November 1 and 2, 1954. One levy in the sum of $1,053.83 was a notice that withholding taxes were due from "Emil E. Hoechst D/B/A Commercial Plumbing Company." The other levy was for $5,189.49 taxes due from Emil and Elsa Hoechst. Nevertheless, Mr. Wittels says that he and his attorney and the Hoechsts' attorney appeared at the appointed place on the closing date but the transaction was not closed. He said that in addition to the two federal tax liens he found that there were delinquent state and county taxes exceeding $13,000 and that sums in excess of $49,000 were due on the deeds of trust. But, admittedly, Mr. Wittels did not have the $61,000 and he does not claim that on that occasion he tendered the Hoechsts or their attorney $61,000. He testified that he told their lawyer "that I would give them the money if they showed me a clear title

free of any encumbrances or liens against the property." Repeatedly he testified that he said "I will give you the money if you give me a clear title," or, once he put it "if they would give clear title free of encumbrances." While he did not have a check or money and does not claim to have made a formal tender of $61,000 he said that he had left a $15,000 check with the Title Insurance Corporation, dated November 15, 1954, (a date on which he did not remember meeting the sellers or their counsel), to apply on the purchase price. And then he claimed to have made arrangements with a Mr. Brune to "loan him some money (no limit specified) to help him close his deal." He also claimed to have made an arrangement with Mercantile Trust Company to borrow $50,000 but Mercantile insisted on a first deed of trust as security and, finally, he said that the $50,000 was not to be used in the closing, that was a separate transaction between him and Mercantile. He testified that he did not refuse to close; "At no time did I ever make any statement about refusing to close the deal on November 22nd, and I am going to repeat to you again—that I said I will give you the money if you give me a clear title."

Mr. Wittels does not claim that the sellers, the Hoechsts, or their representatives, repudiated the contract or refused to proffer, as the closing practice specified, "a general warranty deed." And other than the indicated tax liens and encumbrances, he does not claim that the sellers did not have the required "merchantable title." On the closing date the sellers were to "furnish a general warranty deed" conveying a merchantable title, there was no stipulation in this contract that the sellers were to have a title free and clear of all taxes and liens "as of the time of the contract, or some time prior to that fixed for conveyance." Annotation 109 A.L.R. 242, "Right of vendee prior to time fixed by contract for conveyance to complain of encumbrances or defects in title." And, as a court of appeals said, "the language of the contract convinces

us that the parties intended that a distinction might be observed between defects that impaired the soundness of the fee-simple title and mere incumbrances." Snyder v. Betker, 159 Mo.App. 325, 330, 140 S.W. 323, 325. And in these circumstances, absent fraud or misrepresentation (claims that have been abandoned here) it is the general rule that "a vendee cannot, prior to the time fixed by the contract for conveyance, complain that the vendor's title is defective or encumbered." 109 A.L.R. 1. c. 244. The purchaser is not excused from tender or performance and may not rely on an anticipatory breach of the contract unless the defect is "irremediable" and of course unpaid taxes and mortgages are not irremediable defects. Annotation 40 A.L.R. 693, 701, 705. Also in these circumstances "(t)he general rule is that in the case of a contract containing concurrent conditions or mutual and dependent covenants, either an offer of performance or of readiness to perform by one party must be shown before he can charge the other with a breach, and without a breach there can be no ground for rescission." Annotation 40 A.L.R. 693. "Payment or tender of unpaid purchase money as condition precedent to the right of a purchaser of land to rescind on the ground of defects in or want of title."

■ This is not a suit in equity, it is an action at law for damages and "(a) defendant, though himself delinquent, may thwart the plaintiff's action by showing the latter has not complied with the agreement, although, if the controversy were turned around, and the defendant were complaining, he might be in the same fix." Wimer v. Wagner, 323 Mo. 1156, 1167, 20 S.W.2d 650, 653, 79 A.L.R. 1231. In that case it is pointed out that before the vendee may rely on a defect in title or an anticipatory breach of the contract thereby excusing tender the vendors must have openly and unconditionally refused to perform or the defect in title must have been irremediable. "But it is not true that the vendee is excused from making a tender

merely because he *thinks* (even though correctly) the vendor will be unable to perform within the time stipulated. There must be definite acts or facts convicting the vendor in evidence of a breach, and, where these do not exist, the best and only way for the vendee to show his ability and readiness to fulfill his part of the contract is for him to make a tender of performance." (323 Mo. 1. c. 1167, 20 S.W.2d 1. c. 653–654).

■ As indicated the purchaser claims that the sellers were unable and failed to furnish a merchantable title and that he was ready, able and willing "to perform all of his obligations under the terms of the written sales contract." But he did not tender the sellers the sum admittedly due, $61,000, thereby confronting them with the necessity of delivering a warranty deed free of all claims except those specified in the contract. The buyer's offer that he "would give them the money if they showed me a clear title" was no more than an oral promise or request to do what the written contract in plain terms provided. "Plaintiffs' evidence tended to show that they were ready, willing and able to comply with their part of the contract, but this evidence falls short of that necessary to show a compliance on the part of plaintiffs with their part of the contract, as, in addition to such evidence, there should have been facts tending to show a tender such as we have indicated should have been made." Jose v. Aufderheide, Mo.App., 222 Mo.App. 524, 293 S.W. 476, 479. "The stipulations in the contract for the delivery of the deed conveying a fee-simple title to plaintiff and for the payment of the purchase money were dependent covenants, and a cause of action could not arise in favor of either party without a tender of performance by him, or a waiver of such tender by the other party." Pioneer Gold Mining Co. v. Price, 189 Mo.App. 30, 33, 176 S.W. 474, 475. The fact of failure to tender the specified purchase price, $61,-000, distinguishes the Davis-Barada cases (Davis v. Barada-Ghio Real Estate Co.,

115 Mo.App. 327, 92 S.W. 113; Davis v. Barada-Ghio Real Estate Co., 163 Mo.App. 328, 143 S.W. 1108) because in those cases "The money was demanded and a deed was tendered."

 As to the recovery of the $5,000 earnest money, the court is not called upon in this particular appeal to reconsider the rationale of forfeiture in real estate contracts. See the exhaustive analysis in 31 A.L.R.2d 8–131, "Right of vendee in default to recover back money paid on the contract and withheld by the vendor as forfeited." In the trial of this case and here the appellant Wittels' only claim to the earnest money is that stated in his brief: "All of the evidence, oral and documentary, shows without doubt that the respondents' title failed and was not perfected within the required period of sixty days. Under such circumstances, a purchaser may recover his deposit even without a tender or offer of performance." But as indicated upon the merits of the appeal, it does not appear that the sellers' "title failed," and that may be sufficient to dispose of the point now urged. In addition, even the critics of the forfeiture doctrine recognize that "(u)nder the forfeiture law of most jurisdictions, if the vendee not only defaults but by word or act makes plain an actual intent to abandon performance, or admits his inability to perform, the vendor will be justified in regarding performance as at an end, and while the situation thus produced remains unchanged he may resell the premises (here several years after November 22, 1954, and after institution of this suit in 1957) without becoming obligated to return the money paid." 31 A.L.R.2d 1. c. 128. And finally, Missouri cases holding or indicating that the appellant Wittels is not entitled to recover the $5,000 earnest money for the reason now asserted in his brief are: Pioneer Gold Mining Co. v. Price, supra; Jose v. Aufderheide, supra; Snyder v. Betker, supra; In re First National Bank of Adrian, 207 Mo.App. 115, 230 S.W. 358; Massey v. Butts, 204 Mo.App. 55, 221 S.

W. 153, and Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 741, 136 S.W. 673, 681.

For these indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.